## LUCAS v. AMERICAN BANKERS' INS. CO.*
### No. 4180.

Court of Appeal of Louisiana, Second Circuit, Second Division.

May 4, 1932.

---

*Rehearing denied June 11, 1932.

Argued before STEPHENS, TALIAFER-RO, and CULPEPPER, JJ.

Foster, Hall, Barret & Smith, of Shreveport, for appellant.

Wilkinson, Lewis & Wilkinson and Edward S. Klein, all of Shreveport, for appellee.

CULPEPPER, J.

Defendant, an insurance company of Chicago, Ill., issued from its office in Chattanooga, Tenn., of date October 21, 1930, an accident and health policy to Susan Lucas of Shreveport, La., upon her application taken and recommended by J. R. Billingsby, defendant's local solicitor and agent at Shreveport. Ben Lucas, son of the insured and plaintiff herein, was named beneficiary in the policy.

Under the terms of the policy, in event of accidental death of the insured, the beneficiary was to receive the sum of $500; in event of sickness, or death from sickness, the insured was to receive certain stipulated sums as benefits. The policy provided that "after insured reached the age of 60 years or over, one-half above benefits will be paid, under Paragraph (I)" (which is the paragraph providing for payment on account of death from sickness).

On January 31, 1931, the insured was struck and injured by an automobile as she started to walk across one of the streets of the city of Shreveport, and, as a result, she died the next day. Proof of death was furnished to defendant company with demand by plaintiff, the beneficiary, for settlement, which was refused, and this suit followed. From a judgment rejecting plaintiff's demands he has appealed.

Defendant before answering moved to strike from plaintiff's petition that portion demanding double the amount called for in face of the policy plus $150 as attorneys' fees. The motion was overruled. These demands, however, have apparently been abandoned.

The defense is that there was fraud and collusion practiced upon defendant by plaintiff. It is averred that defendant's agent, J. R. Billingsby, called at plaintiff's home, where Susan Lucas resided, at plaintiff's request, and was shown "a negro woman about 45 years of age, in good and sound health, whose name is unknown to—defendant, and was not Susan Lucas; that said negro woman made an application—for a policy of insurance; that said applicant falsely and fraudulently gave her name as Susan Lucas." Further answering defendant avers that Susan Lucas was a negro woman about 80 years of age, and "in truth and in fact she never made any application for insurance with your defendant," and that because of the fraud and collusion practiced upon defendant in the substitution of a negro woman about 45 years of age in good and sound health, defendant was induced to issue the policy sued upon.

Upon trial, plaintiff testified that it was his mother, not some one else, who was present when the agent called and wrote out the application, and that the application was written for her in her presence. The agent, Billingsby, did not testify positively that the person who was present and for whom he wrote the application was or was not Susan Lucas. He testified that the applicant appeared to him to be about 48 years of age. From the testimony as a whole on this point it appears certain that the woman was Susan Lucas, and none other, who was present and for whom Billingsby wrote the application. In fact, this is not now seriously disputed by defendant. The proof shows, and it is conceded by both plaintiff and defendant, that Susan Lucas, the insured, was a very old negro woman. Plaintiff, in his affidavit in proof of death and claim for payment under the policy, positively states his mother was 72 years of age at her death, which was but a little over three months after her application for insurance was written. Defendant in answer avers that her age was about 80 years. Dr. Butler, coroner, who viewed her body at death, testified that "she was a dried up, gray haired old negro woman." He said he would hesitate to say how old she was, but would "classify her as being real old." So, there can be no doubt that both defendant's agent, Billingsby, and Ben Lucas, the plaintiff, who was present and answered questions asked him by the agent and pretended to give such information as he possessed regarding his mother's age, state of health, and occupation, could not help knowing that Susan Lucas was a very old, "dried up, gray haired" woman. She was present at the time the application was made out, signed it by mark, and Billingsby and plaintiff knew her age was by many years, more than a

score years, over the age fixed in the application by Billingsby and agreed to by plaintiff. It was they who discussed and agreed upon an age to be inserted, and not she.

Neither of these two men testified that Susan Lucas was even asked to state her age. Plaintiff contents himself by saying his mother did not know her age, but does not state he asked her at the time. Billingsby does not say he even asked her her age, but is content to say that the woman for whom he wrote the application appeared to be about forty-eight. His testimony regarding the identity of the applicant, her age, and relationship to plaintiff, shows plainly that he was endeavoring to evade the truth. He testifies that Ben Lucas appeared to be 45 years old, and says, "If I am not mistaken I think he represented this woman to be his sister." Yet, in the application he fixes Ben's age at 32 and his relationship to the woman as that of son. He says he put Susan's age at 48 at Ben's request. If he had wanted her age, he could easily have asked her. She doubtless would have given some sort of an answer, and given her approximate age. Ben himself could doubtless have told within a few years his mother's age. He too was evasive in his answers to questions regarding her age as well as that of his own. He was present, saw the application as it was being made out, knew and agreed for his mother's age to go in at 48 and his own at 32, well knowing that both these were false and pure fabrications, and which could have no other purpose than to deceive defendant company into writing a policy, both as to health and accident, for his mother, and that in event of death by accident, he would be the beneficiary.

From the testimony as a whole, we can construe the actions of both plaintiff and the agent Billingsby as none other than a scheme to defraud the insurance company which the latter represented. If plaintiff did not conceive the idea, he participated in its execution and thereby became a party to it.

The policy recites that it was issued in consideration of the statements contained in the application, copy of which is attached "and which is made a material part" of the policy. It provides that an agent has no authority to change the policy or waive any of its conditions. It states that if the age of the insured is not correctly stated the amount payable under any clause will be such as the premium paid would have purchased at the true age; also, that the policy shall not be valid until countersigned by the duly authorized agent of the company at Chattanooga, Tenn. In the application the applicant expressly agreed that the statements therein made should constitute a part of the policy.

The general rule of law stated in 1 C. J. § 61, under Accident Insurance, is as follows:

"The application for insurance being considered as a part of the policy, it follows that the policy will be avoided where the applicant has made in his application false statements as to matters material to the risk, such as the mental or physical condition of the applicant, his state of health, his age, occupation, salary, or earning capacity, or existence vel non of other insurance."

"A fair test for determining the materiality of a statement contained in an application for insurance is found in answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against." United States Health, etc., Ins. Co. v. Bennett (Ky.) 105 S. W. 433, 434 (cited under 1 C. J. Accident Ins., § 63.)

We do not for a moment think that had the agent of defendant company at Chattanooga known that Susan Lucas was an "old dried up gray haired" woman, 75 or 80 years of age, he would have approved her application and issued the policy, as such would be bound to increase the hazard of sickness and accident, and the consequent loss insured against.

■■ It is true there is a clause in the policy providing that if the age of the insured is not correctly stated the amount payable will be such as the premium paid would have purchased at the true age. But we do not think such can be construed to apply to extreme old age and where the difference in the true age and the age given was so great and no doubt knowingly and purposely greatly exaggerated by both the agent and plaintiff. The clause evidently means to apply to cases where only a mistake of a few days, months, or years, is in good faith made in computing the age. This interpretation, as well as the extent to which an agent's knowledge may be imputed to the principal, is set forth in the case of Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 680, 60 L. Ed. 1202, as follows:

"The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption,—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing."

"Notice to or knowledge of an agent is not notice to or knowledge by the company, unless the circumstances are such as to justify the opinion that the agent would be likely to communicate the information to

those in charge of the affairs of the company. Where the agent is engaged in a fraudulent transaction, and the party seeking to estop the company, by reason of the knowledge of the agent, is aware of his misconduct, he cannot set up the agent's knowledge as being knowledge of the company, for he must know that it is altogether unlikely that the agent would inform his superior officers of his own delinquency." Rocco v. Northwestern National Ins. Co. (1929) 64 Ontario Law Report, p. 559. (Cited and quoted from in Best's Insurance News, New York City, Jan. 11, 1932,—Casualty Edition.)

Plaintiff well knew, and so did his mother, if she knew anything about what was going on (we seriously doubt that she did), that the statements made in the application would be transmitted to the office of defendant in another state, for approval by its proper officer or agent, which was done in due course. Yet plaintiff well knew that the statement relative to the age of his mother was false and extremely exaggerated. While her physical condition might have been good, he well knew that it could not be comparable to that of a woman 48 years of age. The misstatement of age has been held to be a material misrepresentation such as to avoid the payment of insurance. Vance on Insurance (2d Ed.) p. 801; 3 Joyce, Insurance, § 1992; 3 Cooley's Briefs on Insurance, p. 2023.

In Ketcham v. American M. Accident Ass'n, 117 Mich. 521, 76 N. W. 5, 6, it was said that:

"The courts never have said the company is bound by statements contained in an application, when not only the agent, but the assured knows they are untrue, and calculated to deceive, and the application is to be forwarded to the company as the basis of its action. To so hold would put these organizations completely at the mercy of dishonest and unscrupulous agents."

Counsel for plaintiff urges that defendant's agent led the insured to believe that the policy was effective; that no fraud is shown on the part of the insured; and that defendant, under these circumstances, is liable, citing a number of decisions from this state. In Hardy v. Commercial Standard Ins. Co., 172 La. 500, 134 So. 407, cited, it is shown that plaintiff, the insured, made no representation at all regarding the existence of other insurance (which was the ground upon which payment was resisted). He was not present when the policy was written. It was written entirely by defendant's agent who knew all the facts. We do not think the case applicable here, for the reason that plaintiff, the beneficiary who seeks to recover under the policy, was present when the agent wrote the application, discussed with the agent his mother's age, and gave all the other information about her which was inserted, saw and acquiesced in the insertion by the agent of his mother's age, which was grossly misleading. He did not protest, but, according to his own testimony, merely told the agent that his mother did not know her age. Probably she did not know her age, yet that fact did not justify plaintiff's acquiescence in the agent's flagrantly misrepresenting her age. Neither do we think the other cases cited by counsel present circumstances similar to those shown in the present case.

■ Counsel for plaintiff complains that the trial court erred in permitting defendant to avail itself of the defense of fraud on the part of its agent without specially pleading same. Doubtless defendant's agent failed to divulge his fraudulent acts to defendant but laid the blame on the applicant and plaintiff. Upon the trial of the case, it developed that the agent had practiced fraud upon the company which he represented. This was brought out principally on his cross-examination by plaintiff's own counsel and by plaintiff himself while on the witness stand. Certainly plaintiff could not expect the court to disregard these facts thus voluntarily shown by him.

Counsel further complains that the court should not have considered the rate sheet filed in the record after the trial without authority. We do not know whether the court considered it or not, since no written opinion appears in the record. Aside from what the rate sheet shows, the court, we think, had ample other evidence on which to base its judgment without even considering the rate sheet.

■ Counsel contends that there is nothing in the application which limits the authority or power of the soliciting agent and that there was no false statement made by the insured or by the beneficiary to the company's agent. Fraud may be proved by circumstantial, as well as direct, evidence; by simple, as well as direct, presumptions. Civ. Code, art. 1848. The testimony in this case shows that the false statements written into the application by the agent was done under circumstances which show conclusively, we think, a collusion, or a secret common understanding and concert of action by and between plaintiff and defendant's agent, well knowing at the time that it was calculated to deceive, and done for a deceitful purpose. a "playing into each other's hands." The agent no doubt expected to profit from the insurance he wrote, and plaintiff likewise from the result of accidental death to his mother. At least it was designed to obtain some unjust advantage to them or to cause a loss to defendant, or both. The betrayal by the agent, Billingsby, of his trust put an end to his agency. The rules of agency bring no benefit to those who openly and flagrantly violate them for their own gain. Neither

will defendant be bound when its consent to issue the policy was the result of error caused by fraudulent representations to which plaintiff, if not made directly by him, yet by his act and conduct he has contributed to make them effective, the representations being material to the policy contract.

The judgment appealed from is, we think, correct, and is therefore affirmed.