This is a suit by the plaintiff, Mrs. Walter W. Jacobs, to recover the sum of $500, the face value of a policy of industrial life insurance, issued by the defendant, the Metropolitan Life Insurance Company, on the life of her husband, Walter Jacobs.
The defendant answered and denied liability under the said policy.
From a judgment in favor of defendant dismissing plaintiff's suit, plaintiff prosecutes this appeal.
The record reflects that the policy was issued by defendant on January 26, 1942, as a result of a written application, signed by the insured, on January 8, 1942. The insured was hospitalized on January 20, 1942 and remained in the hospital until his death on February 9, 1942. Plaintiff made demand upon defendant and liability was denied on the following grounds:
(1) That the provision of the "When Policy is Voidable" clause applied: and
(2) That the insured wilfully and knowingly concealed his serious heart ailment in the written application for the policy.
The pertinent facts are not in dispute except relative to the question of whether the Metropolitan Life Insurance Company's Agent, George B. Daly, received information concerning the prior illness of the insured Jacobs.
The insured Jacobs signed a written application for the policy on January 8, 1942, which denied that he had received institutional, hospital, medical or surgical treatment or attention within two years of the date of the signing of the application for the insurance in question. It is admitted that prior to the date of the signing of the application, the plaintiff, and possibly the insured, were advised by the physician, who had been treating the insured, that the insured was not an insurable risk. It is also admitted in the plaintiff's own testimony that the insured suffered from a serious heart ailment within two years preceding the date of the application and the ultimate issuance of the policy. Plaintiff further testified that she did not believe that the policy would be issued if the soliciting agent communicated all of the facts that she supposedly told him and, for this specific reason, she failed to pay a first premium on the policy. In addition thereto, it is admitted that no reference to the "medical treatment" or "attention", which had been received by the insured was endorsed on the said policy by the defendant.
During the trial counsel for plaintiff attempted to establish grounds for waiver of the "When Policy is Voidable" clause through the testimony of the plaintiff to the effect that full disclosure of the insured's serious heart ailment had been made to the soliciting agent, Daly. This argument was met by the defendant on the ground (1) that the provisions of the "When Policy is Voidable" clause are not subject to waiver and (2) relying on plaintiff's own story there was collusion between herself and the soliciting agent.
We shall discuss these defenses in categorical order.
The policy contained the following provision:
"When Policy is Incontestable and When Voidable — This Policy shall be incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue, except for nonpayment of premiums.
"Subject to the foregoing provision, if within two years prior to the date of issue of this Policy, the Insured has received institutional, hospital, medical, or surgical treatment or attention, and the Insured or any claimant under the Policy fails to show that the condition occasioning such treatment or attention was not of a serious nature or was not material to the risk, *Page 348 
this Policy shall be voidable by the Company either before or after any claim, unless reference to such institutional, hospital, medical, or surgical treatment or attention is endorsed on this Policy by the Company; provided, however, that this Policy shall not be voidable because of absence of indorsement referring to any information which was disclosed in a written application for this Policy.
"If this Policy is voided by the Company, the Company will return the premium paid."
This court previously considered the validity and enforceability of the "When Policy is Voidable" clause in the case of Prilleux v. Metropolitan Life Insurance Company, La. App., 4 So.2d 768, 770. The clause in the Prilleux case was virtually identical with the clause presently contained in the policy before us. In reasoning that such a clause was valid and enforceable the court stated: "It is seen, therefore, that there is no prohibitory law in this state to preclude the enforcement of the provisions of the 'when policy is voidable' clause of the policy under consideration. Further, we cannot conceive of any theory upon which it could reasonably be held that the enforcement of the provisions of the clause would be in contravention of any public policy of this state. This clause is simple, specific and definite. It is a reasonable contractual reservation of a right to avoid the policy within a reasonable time after its issuance in either of two events contained in the clause (which events are themselves reasonable), conditioned on the existence and affirmative proof of such fact or facts by the insurer. Accordingly, we believe that the clause in question is enforceable."
Thus it is clear that the burden is placed on the plaintiff to show that the insured did not suffer from a disease of a serious nature within two years prior to the date of the issuance of the policy. Obviously the plaintiff has failed to sustain the burden of proof required of her, for in the words of the trial judge found in his reasons for judgment, "In this case there is no question that the plaintiff (insured) suffered a serious ailment within the two years preceding the date of the application and the issuance of the policy. Plaintiff has so admitted and testified that Dr. Joe W. Wells had advised her that her husband was not an insurable risk. * * *"
Counsel for plaintiff contend, therefore, that the validity and enforceability of the "When Policy is Voidable" clause is now without any effect whatsoever. In our opinion this contention is without merit. Plaintiff has alleged that the policy here involved was in full force and effect at the time of the death of the insured. This suit, therefore, is a suit on the insurance policy or on a contract which, like all other contracts, is the law between the parties. Muse v. Metropolitan Life Insurance Company, 193 La. 605, 192 So. 72, 125 A.L.R. 1075. Once the validity and enforceability is admitted, this unambiguous, simple, definite and specific clause must, of necessity, apply and have binding effect on the parties for it is universally recognized that Courts have no authority to change or alter the terms of such contracts or policies. Edwards v. Life Casualty Insurance Co. of Tennessee,210 La. 1024, 29 So.2d 50.
Counsel for plaintiff seem also to assert that since this clause was not in the application and since the insured did not see the policy prior to his death, the "When Policy is Voidable" provisions have no effect. It is well recognized that an application does not represent a contract of insurance and is merely to induce the insurance company to issue a policy which itself embodies the terms and conditions of the contract.
We shall next consider defendant's contention that the insured wilfully and knowingly concealed his serious heart ailment in the written application for the policy. There is a conflict between the testimony of defendant's soliciting agent, Daly, and that of the plaintiff and beneficiary, Mrs. Jacobs. The testimony of neither Daly nor Mrs. Jacobs is corroborated to any extent by other witnesses and, since it is admitted that the insured knew of his serious heart ailment prior to the signing of the application, the question as to the *Page 349 
wilful and fraudulent concealment of this heart ailment by the insured, Jacobs, depends entirely upon which of the witnesses we choose to believe. The suspicious circumstances under which this policy was obtained causes us to look upon the plaintiff's testimony with disfavor.
In Jacobs v. Southern National Life Insurance Company, La. App., 21 So.2d 173, 175, we said that: "While the procurement of these policies shortly before the insured's death might be considered as a suspicious circumstance, we are not now concerned with those other two policies and the suspicion, such as the facts justify, is not sufficient to overcome the proof that in the instant case, the defendant's agent was informed of the true state of Jacobs' health.
Incidentally, the plaintiff, Mrs. Jacobs, in that case, is the same plaintiff, Mrs. Jacobs, in this case.
We feel, therefore, constrained to disregard the testimony of the plaintiff and to find that there was no disclosure of the insured's serious heart ailment by either the insured or the plaintiff.
We now pass to a consideration of the defense that the provisions of the "When Policy is Voidable" clause are not subject to waiver.
We held in Prilleux v. Metropolitan Life Insurance Company, supra, that the "When Policy is Voidable" clause is simple, specific and definite. It is a reasonable contractual reservation of a right to avoid the policy within a reasonable time after its issuance in either of two events contained in the clause. Thus it becomes patent that the provisions of this clause clearly limit the liability of the insurer in the event the insured had received prior medical treatment for a disease of a serious nature within the stated period. Since such a clause limits the liability of the insurer, it is also patent that the coverage of the policy does not extend to the situation where the insured has been treated or has received prior medical attention for a serious disease within two years prior to the issuance of the policy. Hence, in the instant case, the clause is not a forfeiture clause but is a clause specifically limiting coverage.
No Louisiana authority was cited to us and we have been unable to find any passing upon the question of whether a clause of this character was subject to waiver through the disclosure to the soliciting agent of prior medical treatment and disease. In any event, it is well recognized that the doctrines of implied waiver and of estoppel based upon the conduct or action of the insurer or its agents are, generally speaking, not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom; and the application of the doctrine in this respect is, therefore, to be distinguished from the waiver of, or estoppel to deny, grounds of forfeiture.
In Carnes Co. v. Employers' Liability Assur. Corporation, 5 Cir., 101 F.2d 739, on page 742, the court in discussing the question of waiver, where coverage is sought to be extended, states: "* * * The doctrine of waiver cannot be invoked to create a primary liability, and bring within the coverage of the policy risks not included or contemplated by its terms. Estoppel through the knowledge of Guy L. White, the agent of the Insurance Company, could operate in favor of the insured, Carnes Company, only to relieve as against the consequences of violation of the terms of the policy and not to extend coverage. H. D. Foote Lumber Co., Inc., et al. v. Svea Fire 
Life Ins. Co. 179 La. 779, 155 So. 22; Annotation 113 A.L.R. 857-871."
However, there is authority among other jurisdictions to the effect that a provision of life insurance policy limiting an insurer's liability under specified conditions to a return of premium is not subject to waiver or estoppel by reason of the agent's knowledge on behalf of the condition respecting the insured's health.
In Champion v. Life Casualty Insurance Co., 25 Ala. App. 101,141 So. 363, 365, the court in referring to a clause which provided that the liability of the company should be limited if the insured had been attended by a physician for any serious disease or complaint states: "The limitation of the company's liability set out in the above pleas is the proper subject of contract between the parties. In the absence of fraud or misrepresentation on the *Page 350 
part of company or its authorized agents, this part of the policy contract is as binding on the insured as is any other. Placed in the contract for the benefit of the insurer, it was none the less binding on the insured. Recognizing the limited liability, defendant pleads its tender and offer to pay. Being a valid stipulation in the contract of insurance, it was immaterial whether the soliciting agent had knowledge or notice of the condition of insured or not. Assuming that both the agent and the company had such knowledge, the company admits the liability and offers to comply with the contract according to its terms."
In Life Casualty Insurance Company v. Williams,200 Ga. 273, 36 S.E.2d 753, 161 A.L.R. 686, the court states in its syllabus: "The insurer is not estopped from asserting nonliability except for a return of premiums paid, under the limitation of insurance clause and nonwaiver provisions contained in an industrial life insurance policy — providing that, 'Within two years from date of issuance of this policy, the liability of the company under same shall be limited, under the following conditions, to the return of premiums paid thereon: (1) If the insured was not in sound health upon the date of issuance and delivery of this policy, or if the insured before its date had tuberculosis;' and 'This policy shall constitute the entire contract. Any erasure or alteration made herein except by endorsement signed by the president or secretary, actuary, or other officer of the company, shall be void. Agents (which includes managers and superintendents) are not authorized to make, alter, or discharge contracts, or waive forfeitures or any provisions or terms of this policy' — though the application for insurance was not attached to the policy, and where the agent soliciting the insurance and delivering the policy had full knowledge that the insured was not in sound health upon the dates of the application for and the issuance and delivery of the policy, and that the insured had tuberculosis at the time of the application and when the policy was issued and delivered, from which disease she died within less than two years from the date of the policy."
In the words of the court in Horrmann v Prudential Insurance Company of America, 192 Misc. 758, 81 N.Y.S.2d 218, 221: "Without attempting to distinguish between the characteristics and effects of implied waiver and estoppel, neither, singly or in combination, is sufficient to call into existence elements of contract not entered into between the parties, or to create a liability upon one of them contrary to and in addition to the express terms of the contract. This principle has been applied repeatedly to insurance contracts (16 Appleman on Insurance Law and Practice, section 9090, and cases there cited), and this in spite of the liberality shown by the Courts in the construction of such contracts. * * *"
See, also Standard Acc. Insurance Company v. Roberts, 8 Cir.,132 F.2d 794.
Therefore, we are of the opinion that the "When Policy is Voidable" clause is not subject to waiver through any disclosure which was made to the soliciting agent of the defendant insurance company. Plaintiff contends that the knowledge of the agent is the knowledge of the principal and that it is imputed to the principal. It is well established that there is an exception to the general rule that a principal is chargeable with the notice or knowledge of his agent. Where the conduct or position of the agent is such as to raise a presumption that he would not communicate to the principal the facts in controversy, as where the agent is, in realty, acting in his own business and for his own personal interest and adversely to the principal, or, for some other reason, has motive for or interest in concealing the facts from his principal, the knowledge of the agent will not be imputed to the principal. See Annotation 104 A.L.R. 1246.
It appears that the leading case discussing this exception to the general rule is that of Mutual Life Insurance Company v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202. The United States Supreme Court, in discussing this very question, states on page 622 of 241 U.S., on page 680 of 36 S.Ct.:
"The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly *Page 351 
presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption, — when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing. * * *
"The assured at the least consciously permitted an application containing material misrepresentations to be presented by subordinate agents to officers of the insurance company under circumstances which he knew negatived any probability that the actual facts would be revealed; and later he accepted policies which he must have understood were issued in reliance upon statements both false and material. He could claim nothing because of such information in the keeping of unfaithful subordinates. Moreover, the false representations accompanied and were essential parts of the policies finally accepted. He did not repudiate, and therefore adopted and approved, the representations upon which they were based. Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties. * * *"
The doctrine emanating from the Hilton case was approved by the Court of Appeal of Louisiana, Second Circuit, in the case of Lucas v. American Bankers' Insurance Company, 141 So. 394, 397, where it was said: "* * * The agent no doubt expected to profit from the insurance he wrote, and plaintiff likewise from the result of accidental death to his mother. At least it was designed to obtain some unjust advantage to them or to cause a loss to defendant, or both. The betrayal by the agent, Billingsby, of his trust put an end to his agency. The rules of agency bring no benefit to those who openly and flagrantly violate them for their own gain. Neither will defendant be bound when its consent to issue the policy was the result of error caused by fraudulent representations to which plaintiff, if not made directly by him, yet by his act and conduct he has contributed to make them effective, the representations being material to the policy contract."
In McCormack v. Security Mutual Life Insurance Company,220 N.Y. 447, 116 N.E. 74, 78, Judge Cardozo, in discussing the exception to the general rule concerning imputation of the knowledge of the agent to the principal, said: "* * * In the case at bar there is the added circumstances, aside from the position of the agents, that the plaintiff did not intend or expect that they would communicate the truth. She signed a false warranty with instructions to transmit it. She gave no instructions to report her earlier words, which would have made her application worthless. She must have known that it would be mere chance if they were reported. She cannot now insist that what was then but a chance must now be taken for a certainty. The law of imputed notice has its basis in the presumption that an agent will perform his duty. Henry v. Allen, 151 N.Y. 1, 45 N.E. 355, 36 L.R.A. 658. The presumption is not available for the protection of a wrongdoer who had no reason to expect, and did not intend that there should be, a revelation of the truth. * * *"
Counsel for plaintiff contents that the case of Jacobs v. Southern National Life Insurance Company, supra, governs in the present case. As we stated hereinabove, the plaintiff, Mrs. Jacobs, in that case, is the same plaintiff as in this case. This argument, however, overlooks entirely the fact that the "When Policy is Voidable" clause was not at issue, and that such a provision was not contained in the policy therein sued on. The holding of the Jacobs case is quite clear. There we said: "While the procurement of these policies shortly before the insured's death might be considered as a suspicious circumstance, we are not now concerned with those other two policies and the suspicion, such as the facts justify, is not sufficient to overcome the proof that in the instant case, the defendant's agent was informed of the true state of Jacobs' health. We know of no reason why Mrs. Kilean should have testified as she did and to the effect that the defendant's agent knew of Jacobs' illness, unless she was telling the truth. The *Page 352 
knowledge of the defendant's agent is imputed to his principal."
Obviously, therefore, as was stated by the erudite trial judge in his written reasons for judgment: "From the above quotation it will be seen that what the Court of Appeal held was that where the agent is informed by the insured of his condition of health and the agent fails to place such information in the application, the knowledge of the agent is imputed to his principal. There is a well-established exception to the general rule which imputes an agent's knowledge to his principal."
We are, therefore, convinced that the only hope which the insured and plaintiff had that the defendant would grant to the insured the policy here involved, was that the prior illness of Jacobs would not in any way be communicated to the defendant. In view of these facts, it is clear that the exception to the general rule imputing the knowledge of the agent to the principal must apply and there can be no recovery on this policy on the ground of knowledge or imputed notice.
We next consider the last contention of defendant that relying on plaintiff's own story there was collusion between herself and the writing agent. We are of the opinion that plaintiff in her own testimony clearly states that she did not, at any time, believe that the information which she presumably gave to defendant's agent, Daly, would be communicated to the defendant. In fact, the reason that the plaintiff gives for her failure to pay to Daly the first premium due on the policy, was that she did not believe that the insurance would go through. There can be no doubt that the plaintiff knew that no part of her disclosures to the defendant's agent, Daly, would be transmitted to the defendant.
A fortiori the plaintiff should not be permitted to enrich herself at the expense of the defendant and, accordingly, we are thoroughly in accord with what was said in 2 American Jurisprudence, "Agency", Section 372, page 291: "* * * Moreover, as the rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing or to enable third persons to use the agent to further their own frauds upon the principal, it will not apply in favor of one acquainted with circumstances plainly indicating that the agent would not advise his principal, as where the agent is known to be acting adversely to the principal, or where the third person seeking to charge the principal is in collusion with the agent."
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.