136 So.2d 731 (1961)
Martha Beatrice COVINGTON, Plaintiff-Appellee,
v.
PRUDENTIAL INSURANCE COMPANY, Defendant-Appellant.
No. 9615.
Court of Appeal of Louisiana, Second Circuit.
December 27, 1961.
Rehearing Denied January 31, 1962.
*732 Provosty, McSween, Sadler & Scott, Alexandria, for appellant.
Johnson, Morelock, Gatti, Egan & Cook, Shreveport, for appellee.
Before HARDY, GLADNEY and BOLIN, JJ.
BOLIN, Judge.
Mrs. Martha Beatrice Covington instituted this suit against defendant for benefits under a $10,000 life insurance policy purportedly issued by Prudential Insurance Company on the life of her deceased husband. The defendant having refused to pay the claim, a suit was instituted for its recovery in the district court of Caddo Parish resulting in a judgment in favor of plaintiff for the full amount of the policy, plus interest, penalties and attorney's fees, from which judgment defendant has appealed.
Most of the facts are either stipulated or uncontroverted, which we will briefly state. On September 23, 1960, Raymond P. Landry called at the home of plaintiff for the purpose of explaining the provisions of another policy held by her husband with Prudential Insurance Company and to solicit additional business, at which time he was told by Mrs. Covington that she and her husband desired some more insurance but that Mr. Covington had cancer and she was, therefore, certain that he was uninsurable. During the course of the conversation, Mr. Landry ascertained that Mr. and Mrs. Covington were both employed by the Centenary Hardware Company, Inc. He, therefore, explained that both husband and wife could obtain insurance with the company under its Employee Security Program inasmuch as such plan required no medical examination. Mrs. Covington was interested in such a plan, and directed Mr. Landry to contact Mr. William A. Nohse, president of the hardware company. On Saturday, September 24, 1960, Mr. Landry contacted Mr. Nohse and explained the Employee Security Program to him and solicited from him the writing of such a policy. He told Mr. Landry his company would be interested in taking out the insurance if it could qualify and authorized Mr. Landry to do whatever was necessary in order to effectuate the plan.
On Tuesday, September 27, 1960, Mr. Landry brought the application forms for the insurance to Centenary Hardware Company, Inc. These applications were completed in the handwriting of Mr. Landry, but most of the information was furnished by Mr. Nohse. The applications of Mr. and Mrs. Covington were given to a company delivery boy with the instructions to have them signed and returned. The application of Mr. Covington was received by his wife and it is undisputed that she affixed his signature thereto and returned same to the hardware store. On Wednesday, September 28, 1960, Landry picked up all the applications, together with a check for the initial premiums. These applications and the check were then sent to the home office of defendant for issuance of the policies.
On Sunday, September 25, 1960, Mr. Covington was admitted to the Highland Hospital because of "persistent left frontal headaches, intermittent nausea and vomiting". His condition was admittedly due to a cancer which trouble had been previously diagnosed, and he remained in the hospital until his death on October 14, 1960.
Immediately after the death of Mr. Covington, Mr. Landry called upon Mrs. Covington for the purpose of assisting her in making a claim under Mr. Covington's policy. The agent had previously requested that the policy be mailed from the defendant's home office in Houston, Texas to him at Shreveport, Louisiana, and it was so received about October 13, 1960. At this time the application for the policy was *733 not attached to same or in any way made a part thereof. In the meantime, the officials of the defendant learned in the home office that Mr. Covington was in a very serious condition with cancer at the time the policy was issued on his life, and also that certain false statements had been made in his application to the effect that he was actually working for the hardware company at the time of the application and had worked at least 30 hours during the week preceding such application when, in truth and fact, he was not physically able to work on such date. For this reason, the company refused payment of the death benefits under the policy and ordered Mr. Landry to return the policy to its home office. Upon the company's refusal to pay this claim, the hardware company cancelled all of the policies issued under the plan.
It was stipulated during the trial below that the application of Mr. Covington was attached to the policy by the attorneys on March 14, 1961, several months subsequent to the date the present litigation was instituted.
Appellant has assigned three errors in the judgment of the lower court which we will separately set forth and discuss. Its first contention is that it is essential in a contract of insurance as in any other contract that there be an agreement or meeting of the minds of the parties thereto. In support of this argument, we have been cited to LSA-R.S. 22:616 which provides in part as follows:
"No life or health and accident insurance contract upon an individual, except a contract of group life insurance or of group or blanket health and accident insurance as defined in this Code, shall be made or effectuated unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, in writing applies therefor or consents thereto, except in the following cases:
"1. A spouse may effectuate such insurance upon the other spouse. * * *"
It is appellant's position that several of the above requirements were not complied with. It is pointed out that "the time of the making of the contract" was September 28, 1960, which was the date the application and the check for premiums were delivered to Mr. Landry; that on this date Mr. Covington was not competent to contract because of his physical condition; and further, that he had not applied for the insurance in writing, but to the contrary, his wife had admittedly affixed his signature to the application. We are not impressed with this argument because the evidence convinces us that Mr. Covington's physical condition at that time had not deteriorated to such an extent that he was mentally incompetent, or otherwise incapacitated to enter into a binding contract. Mrs. Covington testified that she and her husband discussed the policy, and that he fully understood all of its provisions and authorized her to take out such a policy on his life. We likewise find no merit in appellant's contention that the contract of insurance never came into existence merely because Mr. Covington did not personally sign the application. In the first place, the policy in question does not require a signed application. We also point out that LSA-R.S. 22:616, quoted supra, merely provides such applications should be in writing or the applicant "consents thereto". The statute in question further specifically authorizes the spouse to "effectuate such insurance upon the other spouse". It must be remembered also that Mr. Landry made out the application, and also signed as a witness to the applicant's signature. It is not seriously contended either in defendant's pleadings or evidence that Mr. Landry was ever acting beyond the scope of his authority and we, therefore, cannot see how the defendant can now contend that a proper application was not made by Mr. Covington merely because his wife signed his name to same with his consent.
*734 The next contention made by appellant is that the insurer should not be held liable on this policy because its consent resulted from material and fraudulent misrepresentations which the beneficiary helped to make effective and in support thereof, the following cases have been cited: Lucas v. American Bankers Insurance Company, 2 Cir., 1932, La.App., 141 So. 394; Flint v. Prudential Insurance Co., 1 Cir., 1954, La.App., 70 So.2d 161. We are not impressed with this argument. The cited cases are not only distinguishable on their facts, but are inapplicable because in both cases, the application was attached to the policy at the time of its issuance. The only evidence as to any misrepresentation in the instant case is contained in the application for insurance. As previously stated, this application was not made a part of the contract of insurance when same was issued.
As the name of the beneficiary was not set forth in the policy, it was necessary for the plaintiff to introduce the application in evidence for the limited purpose of showing the beneficiary. However, the record reflects that the application was specifically offered for such limited purpose, and the court below ruled that same could be filed in evidence with such limitations. The defendant contended during the trial below that such limited offering could not be made, and that the entire application was, therefore, properly before the court. Accordingly, defendant attempted to show that material misrepresentations had been made therein to the effect that Mr. Covington was able to work on the day of the application and had worked a minimum of 30 hours preceding the time of such application. To the attempt to elicit such information from the application, the plaintiff objected on the grounds that the application could not be considered or used in an effort to defeat a recovery under the policy unless same was made a part of the policy and attached thereto at the time such policy was issued. In this connection, we note the following provision in the policy:
"Statements: All statements made in any application for this Policy shall be deemed representations and not warranties, and no statement shall avoid this Policy or be used as a defense to a claim hereunder unless it is contained in an application and a copy thereof is attached to this Policy when issued."(Emphasis added.)
The above policy provision is consistent with our statutory provision relating thereto (LSA-R.S. 22:618, subd. A).
Over plaintiff's objection, the trial judge permitted counsel for defendant to submit evidence as to the contents of the application subject to the objection. We are of the opinion that the information contained in the application for insurance should not have been admitted in order to defeat the plaintiff's claim under the policy. The provision of the policy is clear and unambiguous that no information contained in such application could "be used as a defense to a claim unless it is contained in an application and a copy thereof is attached to this policy when issued". We have been cited to no Louisiana law to substantiate appellant's argument that the trial court was erroneous in allowing the application to be filed for the limited purpose of proving the beneficiary under the policy. To the contrary, our jurisprudence permits the offering of written documents in evidence for restrictive purposes and in such instances the parties offering same are not bound by all of its contents. Succession of Murray, 41 La.Ann. 1109, 7 So. 126 (1889); Morgan v. Agricultural Enterprises, 2 Cir., 1960, La.App., 127 So.2d 335. As the only alleged misstatements were contained in the application, such evidence was clearly inadmissible under the provisions of the policy above quoted.
The third argument advanced by appellant is very closely related to the question previously discussed. It is contended that the application was finally attached to *735 the policy before same was actually delivered and, therefore, it should form an integral part of such contract. The evidence and stipulation of counsel clearly refute this argument. The policy was never actually delivered to plaintiff until it was filed in the present litigation and the application in question was attached to the policy by the attorneys for defendant only a few days prior thereto. As it relates to this question, the date of delivery of the policy is irrelevant under its own provision.
For equitable reasons, this court has given serious consideration to this case because any judgment affirming the district court will result in a beneficiary collecting under a life insurance policy when it must be conceded that such policy was issued to a person who was known to be almost at death's door due to incurable cancer. Under such circumstances, we think common logic would dictate that the defendant insurance company would not have issued its policy had its home office been in possession of such information. We have, therefore, made a diligent study of this record in an effort to determine whether this policy had any provisions therein to cover such a situation. The policy in question did not require any medical examination, and no questions were propounded in the application which dealt directly with the applicant's physical condition. Even if the application had been properly attached to the policy, the only information contained therein which touched upon the applicant's physical condition related to whether he was employed at the time. There were no questions asked as to whether the applicant was suffering from cancer or any other type of incurable disease. When attempting to find some legal means to extricate the defendant from its liability, we are further met with the uncontroverted fact that the plaintiff herein has not been guilty of any intentional fraud or misrepresentation. To the contrary, any liability that has been incurred by the defendant under this insurance policy has been occasioned by its own agent. The application was made entirely by Mr. Landry with some help from Mr. Nohse, and nowhere in the pleadings or the evidence does the defendant contend that its agent was acting fraudulently or beyond the scope of his authority. While we, therefore, feel that it is unfortunate that the defendant company is compelled to pay the proceeds under a policy which its home office never fully understood, we likewise do not feel the beneficiary should be held accountable for the acts of the defendant's agent who was acting within the course and scope of his authority.
For the reasons assigned, the judgment of the lower court is affirmed at appellant's cost.
Affirmed.
GLADNEY, J., dissents without giving written reasons.
Rehearing denied; GLADNEY, J., dissents.