STOULIG, Judge.
This lawsuit was instituted by Mrs. Alberta Ventress to recover the sum of $1,-000 as a beneficiary on a policy of insurance issued by the defendant, Commonwealth Life and Accident Insurance Company, on the life of her son Herbert Ven-tress. From a judgment dismissing plaintiff’s suit except for the return of premiums, which defendant deposited in the Registry of the Court, she has perfected this appeal.
The facts, briefly stated, are as follows: Mrs. Ventress, a customer of the defendant, was approached in the fall of 1966 by one of its agents concerning the purchase of additional insurance. Pursuant to a discussion between her and the agent, a policy was issued on October 10, 1966, insuring the life of her son for a face value of ONE THOUSAND DOLLARS ($1,000). Mrs. Ventress was designated as the beneficiary.
On July 19, 1967, some nine months after issuance of the policy, Herbert Ventress died from complications arising out of a severe asthmatic attack. A claim for payment of the proceeds of the policy was made by the mortuary to which the policy had been assigned by Mrs. Ventress to defray burial expenses. The claim was rejected, as well as a subsequent demand made by her counsel, which action precipitated the filing of this suit. In its respons-tive pleadings the defendant urged that the deceased had been confined to Charity Hospital for treatment of a severe asthmatic attack for seven days in May of 1966; and, under the terms of the insurance contract, the policy was therefore voidable by the company since the insured had been treated or hospitalized for a serious disease within two years of its issuance. Specifically, and in pertinent part, *132 the exclusionary provision of the policy reads as follows:
“Exclusions — -No obligation is assumed by the Company * * * unless this Policy has been manually delivered to the Insured in person * * * while the Insured is * * * in good health. If * * * within two years prior to the date of issue of this Policy the Insured has been a patient at, or an inmate of, any institution for the treatment of physical or mental disease * * * or has been attended by a physician, unless it shall be shown by * * * claimant that no such institutional * * * or medical treatment or attention was for a serious disease * * * or physical * * * condition * * * this Policy shall, within two (2) years from the date hereof, be voidable by the Company unless reference to such institutional * * * or medical treatment or attention * * * is endorsed on this Policy by the Company.”
Our jurisprudence is well settled that the “When Policy is Voidable” clauses such as the one which is the subject of this suit are valid and enforceable. In Jacobs v. Metropolitan Life Ins. Co., 39 So.2d 346, at page 348 (La.App.Orleans 1949, writ of certiorari denied May 31, 1949), the court noted:
“This court previously considered the validity and enforceability of the ‘When Policy is Voidable’ clause in the case of Prilleux v. Metropolitan Life Insurance Company, La.App., 4 So.2d 768, 770 [773]. The clause in the Prilleux case was virtually identical with the clause presently contained in the policy before us. In reasoning that such a clause was valid and enforceable the court stated: ‘It is seen, therefore, that there is no prohibitory law in this state to preclude the enforcement of the provisions of the “when policy is voidable” clause of the policy under consideration. Further, we cannot conceive of any theory upon which it could reasonably be held that the enforcement of the provisions of the clause would be in contravention of any public policy of this state. This clause is simple, specific and definite. It is a reasonable contractual reservation of a right to avoid the policy within a reasonable time after its issuance in either of two events contained in the clause (which events are themselves reasonable), conditioned on the existence and affirmative proof of such fact or facts by the insurer. Accordingly, we believe that the clause in question is enforceable.’ ”
It is equally well settled that valid contracts become the law between the parties governing their subject matter and are enforceable as such. In making this point with regard to an exclusionary clause similar to the one under discussion, the court in Jacobs, supra, stated again at page 348:
“ * * * This suit, therefore, is a suit on the insurance policy or on a contract which, like all other contracts, is the law between the parties. Muse v. Metropolitan Life Insurance Company, 193 La. 605, 192 So. 72, 125 A.L.R. 1075. Once the validity and enforceability is admitted, this unambiguous, simple, definite and specific clause must, of necessity, apply and have binding effect on the parties for it is universally recognized that Courts have no authority to change or alter the terms of such contracts or policies. Edwards v. Life & Casualty Insurance Co. of Tennessee, 210 La. 1024, 29 So.2d 50.”
Plaintiff argues that the policy provision avoiding liability is inoperative and inapplicable. She maintains that acting in good faith she informed the agent of her son’s asthmatic condition and was advised that this would not necessarily preclude the issuance of the policy. And she further contends the subsequent delivery of the policy without an endorsement relative to this illness can only lead to the conclusion (1) that the insurer did not consider the condition to be a serious disease or physi *133 cal condition within the purview of the policy’s exclusionary provisions; or (2) that the agent failed to disclose this information to its principal, in which event the agency rule of constructive notice and knowledge should apply. Alternatively, she submits that the evidence does not support the contention that the disease was “serious” within the meaning of the policy.
The first contention of the plaintiff —that the exclusionary clause in the policy of insurance is inoperative and inapplicable —must necessarily be predicated upon the presumption that the defendant had sufficient knowledge upon which a determination of the serious nature of the decedent’s illness could be made. A careful review of the testimony contained in the record convinces us that such is not the case. While Mrs. Ventress testified she informed the agent that her son suffered with asthma, her testimony does not show that he was fully informed of the seriousness of his illness ; nor did she advise him of the seven-day confinement in the Charity Hospital less than six months prior to the issuance of the policy, a fact of which she denied any knowledge. From Mrs. Ventress’s testimony it is obvious the agent assumed that the plaintiff’s son suffered from a mild case of asthma and not the severe type which requires emergency room treatment and even hospitalization. Mrs. Ventress gave him no reason to suppose otherwise. Under these circumstances it would be difficult for this court to hold that the defendant’s agent was fully apprised of facts which would bring into question her son’s eligibility for coverage without a waiver endorsement on the policy. This conclusion renders it unnecessary for us to further discuss the merits of plaintiff’s argument absed on the assumption of this knowledge by defendant’s agent.
Plaintiff’s second argument is that the disease suffered by her son was not “serious” within the intent of the policy. Not only has the plaintiff failed to carry the burden of proof necessary to sustain this contention but the only proof offered points to exactly the opposite conclusion. The testimony of Dr. Monroe Samuels, Associate Director with the Department of Pathology and Chief Pathologist for the Orleans Parish Coroner’s Office, and the only physician to testify at the trial of the matter, reveals the difference between a minimal asthmatic who may treat himself with commercial inhalers and severe asthmatics who may require intravenous ami-nophylline and emergency room treatment or hospitalization. Obviously, Ventress fell into the latter category. Dr. Samuels confirmed that the Charity Hospital records of the deceased reflected his admission into the hospital on May 5, 1966, for the treatment of asthma complicated with pneumonia, and his discharge one week later on May 13. He testified that the decedent’s condition at that time would be classified as serious. Reinforcing this opinion is the significant fact that he was to die less then one year later from complications arising from his asthmatic condition. For, on February 20, 1967, the patient was again admitted to the Charity Hospital emergency room with a chief complaint of asthmatic attack which proved fatal.
The court is of the opinion that the 1966 hospitalization of Ventress for treatment of a disease from which he ultimately died was clearly serious within the meaning of the policy and is sufficient to justify the invoking of the exclusionary clause by the defendant, thus making it liable only for a return of the premiums paid on the policy.
For the foregoing reasons the judgment appealed from is affirmed at appellant’s costs.
Affirmed.