ODOM, Justice.
 

 Plaintiff was employed by the Southern Kraft Corporation as a laborer at its Basstrop, La., mill, and, while at work, his right hand was accidentally caught in running machinery and severely injured. The Kraft Corporation, his employer, carried group life insurance, group accidental death and dismemberment insurance, and group health insurance in favor of its employees. The policies were written by the Metropolitan Life Insurance Company, the defendant in this case. One of the policies provided that an employee should be paid a certain sum for “Loss of one hand by severance at or above wrist-joint; or loss of one foot by severance at or above ankle-joint; or total and irrevocable loss of sight of one eye.”
 

 Plaintiff brought suit to recover the amount specified for “Loss of one hand by severance at or above wrist-joint”. In his petition he described in detail and at great length the nature of the accidental injury to his right hand.
 

 
 *709
 
 He attached the policy sued on to his petition and made it a part thereof.
 

 Defendant excepted to the petition on the ground that it set out no cause of action. The exception was sustained by the trial court, and plaintiff’s suit was dismissed. He appealed to the Court of Appeal, Second Circuit. The judgment was affirmed. La.App., 191 So. 586. Plaintiff applied to this court for writs, which were granted, and the case is before us for review.
 

 Plaintiff grounds his right'to recover on the policy issued by the defendant company. The company’s defense is that, according to plaintiff’s allegations relating to the nature of the injuries to his hand, he is entitled to nothing under the policy because its provisions do not relate to such injuries as plaintiff -sustained by the accident.
 

 Plaintiff did not allege that, as a result of the accident, he lost his right hand by severance. According to his petition, all the bones in his hand were “fractured, broken and crushed” and his hand “virtually torn into pieces”. The third and little fingers were “torn completely off”, and the thumb and first and second fingers were “left "hanging by a small amount of skin attached to the palm”. The thumb and first and second fingers “were sewed back to the hand”. His hand was left in such condition that he “has no control over or use thereof”.
 

 Plaintiff attached to, and made a part of, his petition a photograph of his right hand, bearing this legend: “Plaintiff’s Exhibit ‘A’. Photograph of Right Hand Taken 11/8/38”. The suit was filed on November 28, 1938.
 

 This photograph shows the entire metacarpus, or hand proper, and the entire thumb and first and second fingers attached in place. The third and little fingers are completely severed from the hand; so that plaintiff still has his hand,- less two fingers. But it is alleged and the X-ray shows, that the bones of the hand proper are fractured and dislocated. The hand as it is is useless. Plaintiff, therefore, has lost the use of his hand, as he alleges. But his hand was not severed.
 

 The policy provides in plain terms that its beneficiaries are entitled to a certain sum for “Loss of one hand by severance at or above wrist-joint”. The policy, as written, clearly shows that liability for the loss of a member of the body is limited to the loss of that member “by severance”. It grants full coverage for “Loss of life; or total and irrevocable loss of sight of both eyes”, and full coverage for the “loss of both hands by severance at or above wrist-joints ; or loss of both feet by severance at or above ankle-joints; or loss of one hand and one foot by severance at or above wrist — or ankle-joints respectively”. And it grants one-half the amount for “Loss of one hand by severance at or above wrist-joint; or loss of one foot by severance at or above ankle-joint”. Wherever the loss of a member of the body is mentioned in the policy, it speaks of a “loss by severance” at or above the wrist or ankle-joints.
 

 The policy nowhere speaks of disability caused by the loss of a hand, nor does it mention the loss of the use of a member.
 
 *711
 
 It is, according to its precise terms, an “Accidental Death and Dismemberment” insurance policy.
 

 The risk assumed by the insurer is stated in the policy in clear and unambiguous language. The language of the policy so clearly speaks the intent of the parties that there is no room left for speculation as to its meaning. As relates to the two members of the body, the hand and the foot, it is a “Dismemberment Insurance” policy. It says so. On its face, it speaks of “Accidental Death and Dismemberment Insurance”-, and specifies the sum to be paid for “loss of one hand by severance at or above wrist-joint”. The indemnity specified is for the loss of a hand or a foot “by severance”. The word “severance”, according to Webster’s Dictionary, means the “Act of severing, or state of being severed; partition; separation”. According to the same authority, the word “sever” means: “1. To separate, as one from another; to cut off from something; to divide; to part in any way, esp. by violence, as by cutting, rending, etc.; as, to
 
 sever
 
 the head from the body. 2. To' cut or break open or apart; to divide into parts; to cut through; to disjoin; as, to
 
 sever
 
 the arm or leg”. ,
 

 Admittedly plaintiff’s right hand was not severed from the arm. The third and little fingers were severed from the metacarpus, or hand proper. But there was no severance of the hand.
 

 The theory upon which plaintiff relies for recovery is “that it was the loss of the use of the hand, as such, that was covered by the insurance”, that “the true intent and purpose of the insurance was for indemnity against the loss of the use of the member, as such; and that, where by actual severance, either in whole or in part, the entire use of the member is wholly and totally lost, a liberal construction in line with the logical intention should be applied and recovery allowed”.
 

 The “severance” mentioned by counsel was not the severance of the hand, but the severance of the third and little fingers from the hand. And it is pertinent to state that, according to plaintiff’s allegations and his brief, it was not the severance of these two fingers from the hand which caused the loss of the use of the hand. He alleged, and his counsel says in' brief, that he sustained certain injuries to his hand,' “as a result of which all the bones thereof were crushed and fractured * * *, leaving his hand as nothing more than a mass of flesh and crushed bones, over which he has no control whatever and which he cannot use for any purpose”.
 

 Counsel’s contention, as set out in his brief, is that the policy should not be given, a “strict and literal” construction, but that its “true intent and purpose” should guide in its construction.
 

 If there were ambiguities in the terms of the policy, there would be merit in counsel’s argument. But there are no ambiguities in this policy. An insurance policy is the contract between the parties, and, like all other contracts, it is the law between them. Dorsett v. Thomas, 152 La. 60, 92 So. 734; Laporte v. North American Accident Ins. Co., 161 La. 933, 109 So. 767, 48 A.L.R. 1086.
 

 
 *713
 
 “Agreements legally entered into have the effect of laws on those who have formed them.” C.C. Art. 1901.
 

 The rule for the interpretation of contracts is laid down in Article 1945 of the Civil Code, which provides “That courts are bound to give legal effect to all such contracts according to the true intent of all the parties”, and “That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences”.
 

 The words of this contract are “clear and explicit” and lead to no “absurd consequences”. It specifies indemnity for the loss of a hand “by severance”, but none for the loss of the use of a hand. Apt and precise language was chosen to indicate that the insurer did not intend to indemnify an insured for the loss of the use of a hand, or for the loss of a hand unless such loss consisted in the actual physical severance of that member at or above the wrist-joint. The policy placed restrictive limitations upon the 'insured’s right to recover the indemnity for the loss of a hand, and, because the language used is plain and without ambiguity, we can find the intention of the parties only from the language employed in the contract, keeping in mind the rules of interpretation laid down in the Code, which have been repeatedly followed by this court. The language used in the policy is not confusing. It does not constitute a snare and a delusion to the unwary, and we can think of no ground upon which plaintiff may be relieved from its effect.
 

 The general rule is that, in case of doubt as to its meaning, a contract will be construed against the party who framed it. And, keeping this rule in mind, the courts have generally held that, where there is room for doubt as to the meaning, insurance contracts are to - be construed against the insurer and in favor of the insured, “especially where a forfeiture is involved, so that indemnity will be granted rather than denied”. 14 R.C.L., p. 926.
 

 “But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embodying requirements, compliance with which is made the condition to liability thereon. Neither does the rule prevent the application of the principle that policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties.” 14 R.C.L., § 103, pp. 931, 932.
 

 “In the absence of statutory provisions to the ’contrary, insurance companies have
 
 *715
 
 the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them.” Id., pp.. 929, 930.
 

 If the language of an insurance policy is ambiguous, if it is not clear and explicit, and if for these reasons there is doubt as to its meaning, then it should be construed in favor of the insured and against the insurer.
 

 But, if there is no ambiguity, if the language used is clear and explicit and leads to no confusion, then the policy contract must be construed to mean what it says.
 

 The language of the policy here considered is not ambiguous. It clearly and'explicitly limits the liability of the insurer to the loss of a member “by severance”, and, in the case of a hand, “at or above wrist-joint”. There was no such loss in this case.
 

 It has been held in numerous cases that, where an accident policy provided indemnity for the “loss” of a member, the word “loss” should be construed to mean the loss of the use of that member. Sheanon v. Pacific Mutual Life Ins. Co., 77 Wis. 618, 46 N.W. 799, 9 L.R.A. 685, 20 Am.St. Rep. 151; Sisson v. Supreme Court of Honor, 1904, 104 Mo.App. 54, 78 S.W. 297; Life & Casualty Ins. Co. of Tennessee v. Peacock, 1929, 220 Ala. 104, 124 So. 229; Beber v. Brotherhood of Railroad Trainmen, 1905, 75 Neb. 183, 106 N.W. 168, 121 Am.St.Rep. 782; Noel v. Continental Casualty Co., 1933, 138 Kan. 136, 23 P.2d 610, 612.
 

 In the last cited case, the court- said: “The loss of a member of the body, as used in an accident insurance policy, unless restricted or modified by other language, carries the common meaning of the. term ‘loss,’ which is the loss of the beneficial use of the member. Obviously this may occur when there is not a complete severance * * * from the body.”
 

 In Winters Mutual Aid Ass’n, Circle No. 2, v. Reddin, 1930, Tex.Civ.App., 31 S.W.2d 1103, it was held that “loss of a member” without any further limitations relating to the word “loss” meant the loss of the use of the said member.
 

 But the overwhelming weight of authority is to the effect that, where an insurance policy provides indemnity for the “loss of a hand”, or the “loss of a foot”, or the “loss , of an arm”, and provides in the policy a definition or a specific statement as to what shall constitute a loss of such member, effect must be given to this qualifying definition or explanation.
 

 In Hardin v. Continental Casualty Co., 1917, Tex.Civ.App., 195 S.W. 653, 654, the policy considered by the court provided indemnity against the “loss of one hand”, and then defined “loss” to mean: “a complete severance at or above the wrist”. The court refused to allow recovery to an assured whose hand, although badly mashed and the larger portion cut away, nevertheless had a small, totally useless portion still connected to his wrist. Such an injury, the court said, did not come within the provisions of the policy. The court
 
 *717
 
 said: “It is certainly contemplated by the terms of this policy that the hand must be severed, and not only a portion, * * * and that such severance must be complete and take place at the wrist.”
 

 In Great Northern Life Ins. Co. v. Tulsa Cotton Oil Co., 182 Old. 107, 76 P. 2d 913, an Oklahoma case decided in 1938, it was held that an injury which resulted in the complete loss of the use of the hand did not come within the terms of an accident policy which provided indemnity for the loss of a hand and defined the loss to mean “dismemberment between the wrist and elbow joints”. The court held that there must be a complete severance of the hand as indicated by the term in the policy, and that such term cannot be construed to mean the loss of the use of the hand where the injury does not result in the complete physical loss of the member.
 

 In Wiest v. United States Health & Accident Ins. Co., 186 Mo.App. 22, 171 S.W. 570, a Missouri case decided in 1914, the policy provided indemnity to the assured for the “loss of one hand”. Immediately following this provision appeared the stipulation: “In every case referred to in this policy, the loss of any member or members above specified shall mean loss by severance at or above the wrist joints or ankle joints”. Plaintiff’s injury necessitated the amputation of the greater portion of his left hand, i. e., the thumb and first three fingers, together with a large portion of the palm. The remaining little finger and palm were completely paralyzed and of no use or service to the assured. It was clear that plaintiff had lost the use of his hand as completely as though it had been severed at the wrist joint. The court, however, after making an exhaustive study and review of' the cases, decided that plaintiff had failed to state a cause of action because the policy did not provide coverage for the injury complained of.
 

 There are a number of recent cases in which courts have considered policies containing the identical stipulation as to the loss of a member contained in the policy here under consideration, i. e., where there is indemnity provided for “loss of one hand by severance at or above wrist-joint”. . j
 

 In the recent case of King v. Metropolitan Life Ins. Co., 20 Tenn.App. 246, 97 S.W.2d 651, 653, a Tennessee case decided in 1936, the policy provided indemnity for “the loss of one hand by severance at or above the wrist joint”. The court allowed recovery where a saw cut almost entirely through plaintiff’s wrist, leaving only a small portion of flesh and skin on the under side. A surgeon sewed the hand back on, and, due to there having remained a small portion of flesh and skin, the blood supply continued to the hand, so that the hand seemed as though it had not been severed, although it became atrophied and much smaller and the fingers were stiff and useless. The court concluded that there had been substantial severance, and that a total severance and dismemberment of the hand was not necessary for recovery.
 

 The court’s ruling was based upon its finding that the severance of the hand at the wrist was nearly complete, and that
 
 *719
 
 only a very small portion of flesh and skin had remained; and it was the opinion of the court that such a severance at the wrist should be construed to mean a severance of the hand.
 

 We do not think that this case is authority for the proposition that, where an insured’s hand is so badly crushed that it is no longer useful, an insured is entitled to recover under a policy which provides indemnity for the loss of a hand by severance at the wrist.
 

 In Adair v. General American Life Ins. Co., Mo.App., 124 S.W.2d 657, 659, a Missouri case decided in 1939, the policy considered provided indemnity for the loss of a foot at or above the ankle-joint. It appeared that all but three of the bones of the foot were severed. The court denied recovery on the ground that the injury did not fall within the provisions of the policy, which were: “loss of hands (or hand) and feet (or foot) shall mean loss by severance at or above the wrist or ankle joints (or joint)”.
 

 In this case the court followed the ruling in the Wiest case, supra.
 

 In Metropolitan Casualty Co. v. Shelby, 1917, 116 Miss. 278, 76 So. 839, the policy provided for indemnity in case the insured should “sustain the loss of one hand by severance at or above the wrist”. The insured’s hand had been so' badly cut that it became completely paralyzed and of no use whatsoever; but, since the insured’s hand had not been severed or segregated from the wrist, the court denied recovery, saying : “It is quite clear to us that the learned trial judge misinterpreted what we deem as the plain, unambiguous terms of the policy, and to approve his construction we believe we would have to make for the parties a contract they did not make for themselves. The plaintiff was undoubtedly severely injured, and it is a pity that he may not, to some extent, be compensated for his loss, but it is
 
 not the
 
 province of the courts to make contracts for litigants, but to enforce contracts made by them.
 

 “Reversed and dismissed."
 

 To the same effect are the following cases : Continental Casualty Co. v. Bows, 1916, 72 Fla. 17, 72 So. 278; Newman v. Standard Accident Ins. Co., 1915, 192 Mo.App. 159, 177 S.W. 803; Brotherhood of Railroad Trainmen v. Walsh, 1913, 89 Ohio St. 15, 103 N.E. 759.
 

 Counsel for plaintiff cites and relies upon the following cases: Beber v. Brotherhood of Railroad Trainmen, 75 Neb. 183, 106 N. W. 168, 121 Am.St.Rep. 782; Sneck v. Travelers’ Ins. Co., 156 N.Y. 669, 50 N.E. 1122; Id., 88 Hun 94, 34 N.Y.S. 545; Moore v. Ætna Life Ins. Co., 75 Or. 47, 146 P. 151, L.R.A.1915D, 264; Ann.Cas.1917B, 1005; and Jones v. Continental Casualty Co., 189 Iowa 678, 179 N.W. 203, 18 A.L.R. 1329.
 

 In the Beber case, the policy contained the following provision: “Any member in good standing,
 
 suffering, by
 
 means of physical separation, either the loss of a hand at or above the wrist joint, or suffering the loss of a foot at or above the ankle joint, or suffering the loss of the sight of both eyes, shall be considered totally and permanently disabled and shall receive the full amount of his beneficiary certificate, but not otherwise.”
 

 
 *721
 
 The insured had his left hand so badly-injured that its usefulness was practically destroyed, although the hand was not severed from the wrist. The trial court was of the opinion that plaintiff was not entitled to recover. But its ruling was reversed by the appellate court, mainly upon the ground, as we understand the court's opinion, that the policy was ambiguous and for that reason should be construed against the insurance company. In the course of its opinion, the court, speaking of the indemnities insured against, said:
 

 “Was it the severance of the entire hand at or above the wrist joint? or was it the entire loss of the use of the hand at or above the wrist joint by physical separation? If the only risk assumed by defendant was the amputation of the whole hand, then the learned trial court was fully justified in directing a verdict for defendant; but, if a fair and liberal interpretation of the contract most favorable to the insured can make it a risk which includes the total loss of the use of the hand by severance, then the question as to whether such loss is established .by the evidence is properly one for the triers of such facts.
 

 “If the officers of the society, who prepared the by-law in which the contract is set forth, have used ambiguous terms, the ambiguities must be interpreted in the manner most. favorable to the insured. If, instead of stating in plain and simple language the exact loss they intend to protect against,
 
 they propound riddles in a jargon of equivocal phraseSj these riddles should be solved most favorably to him who has been the victim of such
 
 artifice." (Italics ours.)
 

 Apparently the decision in this case turned upon the court’s finding that the provision of the policy quoted above was so ambiguous as to make it impossible for one reading it to understand just what it meant.
 

 The Sneck and Moore cases are not exactly in point, for the reason that the provisions of the policies relating to the accidental injuries were not the same as the provisions contained in the policy under consideration in the case at bar.
 

 In the Jones case [189 Iowa 678, 179 N. W. 204, 18 A.L.R. 1329], the policy specified insurance of $1,000 for the loss of either foot. A later provision in the policy read: “ ‘Loss,’ above used with reference to hand or foot, means complete severance at or above the wrist or ankle”.
 

 We note this difference between the wording in the policy in that case and the wording of the policy in 'this case. In the Jones case, the word “loss”- of a hand or foot was defined to mean “complete severance at or above the wrist or ankle”, while, in the case at bar and in many of those we have cited and reviewed, the loss of those members was defined to mean “by severance at or above the wrist-joint” or severance at or above the ankle-joint. The word “joint” was omitted from the policy in the Jones case. In that case the insured’s foot was amputated below the ankle-joint but near to it. A portion of the foot was left. Plaintiff was allowed to recover.
 

 The court discussed the Wiest case (186 Mo.App. 22, 171 S.W. 570, cited supra), where the policy provided that the loss of a hand “shall mean loss by severance at or above the wrist joint”. In the Jones case,
 
 *723
 
 the court said: “It will be noticed that in that case [Wiest] the severance was to be at the joint. This, we think, fixes the point more definitely than would have been the case if it had been omitted. It should be said, however,-that some though not all the definitions of ankle say it is the joint connecting the foot and the leg. This -feature will be taken up later in the opinion.”
 

 The court quoted several definitions of the word “ankle”. One definition quoted is: “The joint which connects the foot with the leg”. Another definition quoted is: “The bones of the tarsus, or the ankle, are seven in number”. Another is: “The part of the leg near the ankle joint”.
 

 After citing these definitions, the court said: “These definitions of ‘ankle’ differ. Some give it as the lower part of the leg. If this is accurate, why may it not be said to be the upper part of the foot ? Some of the definitions say it is the joint. The joint perhaps would be more definite than the ankle. * * * Can it be said that any of these definitions fix a definite or precise point, or place, when used in connection with the words ‘severance at the ankle’? * * * Under these definitions, what is the ankle? What do the words ‘at the ankle’ mean?”
 

 Apparently the case hinged, in the opinion of the court, on the question, “What is the ankle?” and it said: “We do not hesitate to s'áy that since the bones severed and the point of severance were a part of the ankle, the severance was at the ankle”.
 

 If the policy in that case had specified indemnity “for loss of a foot by severance at or above the ankle-joint”, it is not likely that the court would have held the defendant liable. That case does not support plaintiff’s contention. Furthermore, in the case of Adair v. General American Life Ins. Co., cited supra (decided nineteen years after the Jones case was decided), the court referred to the Jones case and refused to follow it, but followed instead the Wiest case.
 

 For the reasons assigned, the judgment of the Court of Appeal, which affirmed the judgment of the trial court, is affirmed.