**INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**W. B. DELAFIELD, Appellee.**

**No. 18154.**

United States Court of Appeals Fifth Circuit.

May 19, 1960.

Rehearing Denied June 13, 1960.

John R. Stewart, Thomas F. Porter, Lake Charles, La., for appellant.

Norman F. Anderson, Kaufman, Anderson, Leithead, Scott & Boudreau, Lake Charles, La., for cross-defendant-appellee.

Before HUTCHESON, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal involves simply and solely the construction of a rider to an insurance policy. Appellant issued a policy to Appellee in the latter's interstate trucking business to protect shippers of cargo against loss or injury to the cargo. The printed form of insurance contract ex-

cluded coverage for damage to cargo unless such damage resulted from an accident to the carrier's vehicle.

Under requirements of the Interstate Commerce Commission, Delafield, the carrier, was required to have his insurance policy contain an endorsement (Form BMC 32) insuring the shipper's cargo against this excepted casualty. Delafield complied with this requirement and Appellant attached the BMC endorsement to the policy. However, Appellant did more than this. It affixed a rider to the policy which, by its terms, protected the cargo even against injury not caused in an accident to the vehicle. This part of the rider was in the following language: "1. Coverage is provided hereunder on the Assured's liability as a carrier while the described property is in the custody of the Assured in transit in or on motor trucks or trailers owned, operated by, leased or hired by or for the Assured, or while held pending delivery, transfer, or instructions from the shipper or consignee in or on docks, depots, terminals or similar points used by the Assured within the limits of the Continental United States."

Paragraph 10 of the rider provided as follows: "Whereas the undersigned Assured is required by the provisions of State and Federal Laws to file, in accordance with such laws, a policy of insurance containing an endorsement as provided in such, it is not the intent of this Insurance Company or the undersigned Assured that this Insurance Company in consideration of the rate of premium charged for such policy shall ultimately sustain any loss or damage to property in consequence of the attachment of such endorsement, it being understood and agreed that the undersigned named Assured shall pay such losses to prevent judgment being rendered or in the event of judgment shall at all times indemnify and hold the said Company harmless from and against any and all claims for damages, loss, costs, charges and expenses of whatever kind or nature including counsel or attorney's fees, it being understood and agreed that this Company shall

only be liable in accordance with the terms and conditions of this policy."

The cargo on the trip here involved struck an overhead obstruction and was damaged. The insuror paid for the damage to the shipper and in the ensuing action sought to recover this amount, some $6,500, from Delafield. This effort was based by the insuror on the terms of Paragraph 10, it being contended that the loss paid by the insuror was one arising "in consequence of the attachment of such endorsement".

Appellee contends that the undertaking of the insurance company to pay for the damage to the cargo arose, not from the endorsement, but rather from Paragraph 1 of the rider, above quoted. Thus arguing, Appellee says that payment for such loss or damage was not sustained "in consequence of the attachment of such endorsement".

■■ We agree with the conclusion of the Trial Court that the language of the policy, including the rider, is so clear as to require without proof of any external facts, a holding that the payment by Appellant was not sustained "in consequence of the attachment of (the I.C.C.) endorsement." There can be no quarrel with Appellant's premise that a carrier may validly or legally bind itself to reimburse the insuror for any payments made by the latter as to which the parties may wish to exclude protection as between themselves. This is all the cases of Wheeler v. American Fidelity & Casualty Company, Inc., 5 Cir., 164 F.2d 590 and Bennett v. Preferred Accident Insurance Company of New York, 10 Cir., 192 F.2d 748 hold. Neither of these cases is concerned with the question presented here, that is, whether, when the I.C.C. requires coverage by a particular endorsement, and the insuror provides such coverage by a rider to the policy, and, to a limited extent, by the I.C.C. endorsement, an agreement to reimburse the insurance company for any payments made in consequence of the attachment of the endorsement would obligate the insured to make reimburse-

ment for payments made in consequence of the obligations created by the rider.

The endorsement (Form BMC 32) limited the liability of the insuror to a maximum of $1,000 in respect of the loss or damage here involved. Recovery was had against the insurance company in the total sum of $5,600. It is clear that the insurance company's obligation to pay was not based upon the limited obligation provided by the I.C.C. endorsement, but was based rather upon the obligation it assumed under Paragraph 1 of the rider. It is true that Paragraph 10 of the rider strongly indicates that the additional coverage, whether by Paragraph 1 of the rider or by the I.C.C. endorsement, was furnished only because of the requirement of the Interstate Commerce Commission, nevertheless, having assumed the obligation under Paragraph 1 the company could not provide for indemnity for payments arising under that obligation without expressly saying so. Instead of saying so it clearly stated that it was to be indemnified only for any losses it might sustain in consequence of the attachment of the endorsement.

Appellant strongly urges that it is the duty of the court to attempt to find the intent of the parties by reading the entire contract. Appellant cites the Louisiana case of Muse v. Metropolitan Life Insurance Company, 193 La. 605, 192 So. 72, 125 A.L.R. 1075, and Nyman v. Monteleone-Iberville Garage, Inc., et al., 211 La. 375, 30 So.2d 123. There can be no question but that this is the law in Louisiana as it is everywhere. But the court is not at liberty to speculate that the parties intended something different from what they actually said in their contract. A strong argument could doubtless be made that the parties would not have included the coverage contained in Paragraph 1 of the rider into the contract at all if they had realized that they were thus undertaking by the contract of insurance itself to give all the protection and more than required by the I.C.C. regulations. Nevertheless, this action was not brought for the purpose of reforming a contract entered into by mutual mistake. No testimony was tendered seeking to prove mutual mistake. In such circumstances we must recognize that if the language of the contract is clear the court does not have the power to speculate on why the parties drew it as they did. The Louisiana Supreme Court in the last cited case said at 30 So.2d 125, "it is provided that 'courts are bound to give legal effect to all * * * contracts according to the true intent of all the parties,' and such 'intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences' " citing Article 1945 LSA–C.C. We are constrained to find that since the payment and loss suffered by the insurance company was not sustained "in consequence of the attachment of" the BMC 32 endorsement but was sustained in consequence of the separately undertaken risk in Paragraph 1 of the rider, the insurance company does not bring itself within the provisions of Paragraph 10 which would entitle it to be indemnified.

The judgment is affirmed.

HUTCHESON, Circuit Judge (dissenting).

Believing that the result of the judgment in this case and its affirmance in this court run directly counter to the truth and right of the case, I must respectfully dissent from the opinion which approves such a result. Whether the personal interrogation by the judge, over the objections of plaintiff's counsel, of defendant Delafield to obtain from him his intent and opinion as to the meaning and effect of the policy provisions in question,[1] and of the insurance agent to

---

1. "The Court: Did you read this portion of the policy, Mr. Delafield, that defines the word 'collision' and wherein a distinction is made to say this policy would not include a contact of any article or object being transported except as a result of a collision of the transporting vehicle?

"The Witness: No, sir, I did not read it.

obtain his view, was because the district judge thought the suit was one for reformation of the policy, or whether he thought that he had a right in law in interpreting the policy to seek out the intent and opinions of the parties to it as to what was meant and intended by it, is not clear.

It is quite clear, however, from this interrogation and from his findings: (1) that Delafield thought he was buying full coverage; (2) that Delafield was told by insurer's agent that the policy of insurance afforded full coverage (this, in fact, was true); (3) that Delafield did not read all of the policy and did not read Par. 10 of the typewritten part of the policy containing the indemnity agreement, and he had no discussion with the agent of insurer as to whether or not in certain cases the insurance company might have to pay for a loss under the policy and then collect the amount of such payment from Delafield; (4) that a special agent of the insurer testified that no additional premium was charged the insured for extending the general common carrier coverage, that the court accepts this as true, and that there is no evidence that the insurer's method of computing premiums was known to Delafield; and (5) that the agent also testified, over objection, that the consideration to support the additional coverage was the indemnity agreement on the part of the insured contained in Par. 10 of the rider and his finding. "We find as a fact that this is true but it is not shown that Delafield was informed or had any knowledge thereof."; that the district judge mistakenly thought that if Delafield did not know and understand the meaning and effect of the paragraph 10, it could not be enforced against him.

It is also clear that his Conclusion of Law No. 5, that the liability of the insurer to the plaintiff, for which the insurer seeks indemnity, *is not in consequence of the attachment to the policy of an endorsement which the insured Delafield was required by provisions of state and federal laws to file* with the policy of insurance, is directly contrary to the facts, particularly those just above stated as Nos. 4 and 5.

If, as the district judge seemed to think, reformation was called for, it was the insurer which, charging no money premium for the extra coverage but extending it entirely in consideration of

"The Court: Did you actually negotiate this insurance contract yourself?

"The Witness: Well, part of it I did.

"The Court: Someone in the office got this contract for you?

"The Witness: Well, they helped out.

"The Court: Did you call up the man who wrote the policy for you?

"The Witness: I didn't have to call him. He was there nearly every day.

"The Court: Did you discuss with him the meaning of this policy?

"The Witness: Yes, sir, I sure did.

"Mr. Porter: Judge, is it proper to object to a question of the Court?

"The Court: I think that is improper. I think the intent of the parties may be governed here in the final analysis. You have a right to call the insurance agent who wrote it.

"Mr. Porter: The insurance agent hasn't a right to change a policy.

"The Court: Where do we go if there is ambiguity in the policy?

"Mr. Porter: I understand you read the whole policy and get your intent from that.

"The Court: If there is ambiguity after reading all of that, then what do we do according to your understanding of the law?

"Mr. Porter: You simply can't ask a man who got the policy through one of his employees and never read it himself.

"The Court: I am trying to find out what the terms were of negotiating this policy. Of course, the law is pretty well settled that if there was ambiguity the ambiguity is resolved against the person who wrote the policy. I think if I could resolve it by the intent of the parties it would be better.

"Your objection is denied. Who did you discuss this policy with?

"The Witness: Walter Trahan.

"The Court: Had you had any previous losses similar to this loss?

"The Witness: Well, not to the extent of that loss. I had some minor losses from time to time.

"The Court: Judge Porter will object to this question."

the inclusion of paragraph 10 of the typewritten rider, was entitled to a decree reforming the policy to give it the indemnity it had purchased by granting the insured full coverage. It seems clear to me, however, that this is not a case for reformation but one in which, under the undisputed facts and the findings of the court, judgment should have, as matter of law, gone for the insurer.

It seems clear to me, also, upon the record, *that it would have gone for the insurer but for the district judge's mistaken idea that because Delafield did not fully understand the meaning and effect of the agreement which he did not even read, he ought not to be bound by his contract,* and this in the face of the fact, that Delafield stated that the negotiations were not conducted entirely by him but by others also, and of the law, that in law his intent or feeling could have no bearing on the case. The three cases cited by appellant, one from this court, Wheeler v. American Fidelity & Casualty Company, Inc., 5 Cir., 164 F.2d 590, Bennett v. Preferred Acc. Ins. Co. of New York, 10 Cir., 192 F.2d 748, and Travelers Mutual Cas. Co. v. Herman, 8 Cir., 116 F.2d 151, establish the validity of the indemnity agreement and it cannot be the law that because the insured did not read or understand the provisions of his policy he should be saved from abiding by them.

The point, of which the majority makes so much, that the full liability on the bond required by the Interstate Commerce Commission was limited to $1000, is, in my opinion, without bearing on this case. The facts show that the insurer gave the insured full coverage beyond the terms of the original policy in exchange for the insured's agreement to indemnify it for losses growing out of that coverage. The law ought to be, and I think is, that the insurer having carried out its part of the bargain, the insured should be held to his.

Finally, the majority is in error in thinking and holding that because the suit was not brought for the purpose of reforming the contract for mutual mistakes, such relief could not be granted in the cause. This court has long held to the contrary.[2] In addition, if the court is of the opinion that if the issue had been made below, reformation could or should have been granted, the court can and should reverse the cause with directions to try the issue under the governing legal rules.

Rehearing denied: HUTCHESON, Circuit Judge, dissenting.

---

**2.** Providence Washington Ins. Co. v. Rabinowitz, 5 Cir., 227 F.2d 300; Day v. Fireman's Fund Ins. Co., 5 Cir., 67 F. 2d 257; See particularly Springfield Fire & Marine Ins. Co. of Springfield, Mass. v. Martin, 5 Cir., 77 F.2d 492. Cf. Northern Assur. Co. v. Grand View Bldg. Ass'n, 203 U.S. 106, 27 S.Ct. 27, 51 L. Ed. 109, and 45 Am.Jur., "Reformation of Instrument", Sec. 11, p. 589.