MILLER, Judge.
Emanuel F. Mayeux sued J. B. Talley Construction Company, Inc., et al. for the value of labor and materials furnished in the construction of a Louisiana Highway Project. Employers Liability Assurance Corporation, Ltd., was made defendant on its bond securing performance and payment by Talley of all debts due for construction. It was stipulated that Talley owed $3,210.55 to Mayeux for his work and materials.
Talley reconvened for $10,069.75 less the $3,210.55, based on a contract dated November 20, 1965 between Talley and May-eux. The pertinent provisions provide that Mayeux is to:
“(2) Assume any and all risks involved in this work and specifically agree to hold J. B. Talley & Co., Inc., harmless against .any and all claims whatsoever nature and kind for, death occasioned or injury sustained to any one in connection with the prosecution of this work.”
‡ i{c % ‡ i{<
“(4) Carry the following insurance coverage on operations under this agreement:
•(a)- We-i-kmeafe statutory limits?
(b) Public Liability with Bodily Injury and Property Damage Coverage.
(c) Automobile Liability Coverage with Bodily Injury and Property Coverage.
And furnish J. B. Talley & Co., Inc., with an Insurance Certificate, stating in *538 surance coverage and include an endorsement to the effect that such coverage will not be cancelled without giving us ten (10) days written notice.”
The foregoing was contained in a mimeographed form of conditions, prepared by Talley. Subsection (a) of paragraph numbered (4) (which required Mayeux to furnish workmen’s compensation insurance) was stricken, and there was substituted in a separately typewritten page of conditions, the following:
“It is also agreed that J. B. Talley & Co., Inc., will pay your laborers according to the payroll sent in by you and will backcharge your account for amount of payroll and will also back-charge your account for State Unemployment, Federal Unemployment, Federal Social Security (Employer’s share), Comprehensive General and Workmen’s Compensation according to payrolls paid. Rates charged will be at rate which is being charged to J. B. Talley & Co., Inc.
In case of an accident or accidents affecting our rate — difference in rates will be charged your account.”
Talley paid Mayeux’s employees wages in the amount submitted by Mayeux and charged Mayeux for this amount plus 1S'%. This 18% charge was made up of:
(a) Unemployment taxes — State & Federal 3%
(b) Social Security taxes — employer’s share 4%
(c) Comprehensive & Public Liability Ins. 4.67%
(d) Workmen’s Compensation Insurance 6.33%
Mayeux’s employees were considered on Talley’s books as Talley’s employees during this contract period.
While this contract was in effect, two of Mayeux’s employees sustained compensable accidents — Pierite in January of 1966, and Berry in April of 1966. Pierite’s claim was settled at a cost of $500, all of which was paid by Talley, without referring it to the insurance carrier. This $500 was back-charged to Mayeux. When Mayeux learned that Talley intended to collect this $500 from him, Mayeux then obtained his own workmen’s compensation insurance coverage. But the Berry accident had occurred before this time. The Berry claim was settled with payments by Talley’s insurer, totaling $5,461.50 plus costs of Court.
Talley contends that the Berry claim caused a rate increase of $10,069.75, and therefore claims that amount less the $3,-210.55 balance on the contract, and prayed for judgment in the amount of $6,859.20.
The trial court awarded plaintiff $3,210.-55 and denied the reconventional demand. It was held that the provision “In case of an accident or accidents affecting our rate — difference in rates will be charged your account.” required that Mayeux pay the increased rate charged, rather than that Mayeux would pay the insurance premium plus the entire loss, plus the costs incurred by the insurance carrier in settling the loss. It was further held that Talley failed to establish the increased “rate”. The trial court therefore dismissed defendant’s re-conventional demand “without prejudice” reserving to defendant the right to claim whatever rate increase the Berry loss or claim would have caused on a regular Workmen’s Compensation policy considering the total payroll of plaintiff only.
Defendant appealed suspensively, contending that the trial judge erred:
(1) in concluding that the “retrospective plan” of workmen’s compensation *539 insurance of Talley was unknown to Mr. Mayeux and was not disclosed to him when the contract between plaintiff and Talley was signed.
(2) in his conclusion that there was no evidence in regards to the rate increase occasioned by Talley by reason of the Berry claim, and in concluding that there is no evidence in the record regarding what the rate of increase, by reason of this loss, would have been.
(3) in concluding that the “hold harmless clause” in the contract is inconsistent with the other terms of said contract and, accordingly, is irrelevant in determining the true intent of the parties herein.
(4) in concluding that the contract was ambiguous and should be interpreted so that it would be to the best advantage of plaintiff.
(5) in failing to interpret the contract in accordance with its full content and meaning.
Talley is a contractor on a large scale. On the average he has several jobs in progress at the same time employing some three to four hundred employees. He also has several different businesses — all of which are covered by workmen’s compensation insurance. On October 1, 1965, because of his high premium rate, Talley purchased a “retrospective plan” type of workmen’s compensation policy covering all businesses and employees. The policy provided different rates for different types of work, with concrete sewerage work (as done by plaintiff’s employees) falling within one of the highest rates — 6.33% of the payroll. Under this “retrospective plan” Talley would benefit by lower premiums when his loss ratio is low. On the other hand, if his loss ratio increased, Talley would have to pay higher premiums over a three year period. The higher premiums would be sufficient to allow the insurer to recover the cost of settling the claim. Talley’s one year premium before any adjustments amounted to more than $55,000. (Tr. 180).
Mayeux is a small contractor in the concrete mix business. He sought out subcontracts similar to this and had subcontracted many jobs over his 20 years in the business. He carried workmen’s compensation on all of his employees, except when they were working under a contract where the contractor carried the insurance. On several occasions he entered into arrangements similar to this, so that he would be relieved of the bookkeeping related to making the payroll. He well understood that losses could change the insurance rate charged by the insurer. However, he never heard of a plan whereby the insurer collected a premium and then charged 100% of the claim paid plus a service charge for every claim settled.
While plaintiff and defendant were negotiating this subcontract, Talley mentioned that he had a “retrospective plan” of insurance. But there was no discussion by the parties as to how this plan worked. Even at trial, Talley and his office manager, Mr. Courville, could not explain the rates under the “retrospective plan”. Talley brought an expert from the insurance carrier, Mr. Roland Guerin to testify relative to rate adjustments occasioned by losses.
When asked to give the rate increase to Talley resulting from the Berry claim, Guerin answered that the contract undoubtedly meant “overall insurance cost” rather than “rates”. Tr. 184, 185. He could not calculate the exact cost to Talley resulting from the Berry claim, because the complicated formula depended on the loss ratio on the entire policy covering Talley’s employees in various businesses through the year 1970. He stated that he could not determine the actual cost until 1971. Tr. 191. The $12,000.00 (Tr. 162), or $8,153.00 (Tr. 163), or $8,457.00 (Tr. 164) additional cost resulting from the Berry claim, would cause approximately a 6% change in the total premium collected during each of three years. Tr. 165, 167, 175, 177. This *540 would result in the 6.33% of payroll rate collected for Mayeux’s employees being increased to almost 7i% of payroll. On the other hand, there is substantial testimony to indicate that Talley’s loss experience on his other employees for that year was favorable to Talley; that therefore, notwithstanding the Berry claim, Talley’s rate during the period in question was reduced rather than increased. Because of the Berry claim, it was not reduced as much. Tr. 167, 169, 170, 175, 187.
We find no error in the trial court’s conclusion that although Talley mentioned that the company’s workmen’s compensation insurance was on the “retrospective plan”, this was not interpreted by anyone as requiring Mayeux to pay the workmen’s compensation insurance premium plus 100% of the claim plus a substantial charge for the cost of settling the claim.
While there was a lot of testimony giving the insurance company’s cost of settling the Berry claim, there was no proof as to any increased rate actually charged to Talley because of the Berry claim. The record suggests on the contrary, that Talley’s rate will be reduced.
The “hold harmless clause” quoted as paragraph number (2) is not applicable. Had the contract stopped at that point, it would then have applied. But the contract continued and made specific provisions with regard to workmen’s compensation claims. Those are the provisions here applicable. Talley purchased insurance to cover the loss and the premium was paid by Mayeux.
After conference between the parties, the contract was prepared by Talley and submitted to Mayeux through the mail. According to Guerin, Talley’s expert on the “retrospective plan” (a term which was not used in the contract between the parties but was mentioned during negotiations), the contract should have provided that the “insurance cost” would be charged to Mayeux, rather than as provided in the contract, the “difference in rates will be charged your account.” (Tr. 184, 185) This ambiguity must be interpreted against the party who framed it. Muse v. Metropolitan Life Insurance Company, 192 So. 72, 193 La. 605, 125 A.L.R. 1075 (1939).
Appellee complains that the trial court should have dismissed appellant’s re-conventional demand with prejudice. We do not consider this contention, for appellee did not answer the appeal. In re Pan-American Life Insurance Company, 75 So. 2d 524 (La.App. 2nd Cir. 1954).
The trial court’s judgment is affirmed. Costs are to be paid by defendant-appellant.
Affirmed.