236 So.2d 900 (1970)
James Ralph BARRETT, Sr., et ux., Plaintiff-Appellant-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendant-Appellee-Appellant.
No. 3115.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1970.
Rehearing Denied July 24, 1970.
*901 Scofield & Bergstedt, by Thomas M. Bergstedt, Lake Charles, for plaintiff-appellant.
Hall & Coltharp, by L. H. Coltharp, Jr., DeRidder, Plauche, Sanders & Smith, by Allen L. Smith, Jr., Brame, Stewart & Bergstedt, by John E. Bergstedt, Lake Charles, for defendant-appellee.
Adams & Reese, by George V. Baus, New Orleans, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
MILLER, Judge.
Plaintiffs, Mr. and Mrs. James R. Barrett, Sr. are claiming damages for the wrongful death of their 14 year old son, David Barrett. David was killed while operating a motorbike which collided with an automobile in the City of Sulphur on April 26, 1967. Defendants are Joseph L. Guidry, owner of the automobile and father of Charles Guidry, minor operator of the automobile; State Farm Mutual Automobile Insurance Company, the alleged liability insurer of Joseph L. Guidry; Fidelity and Casualty Company of New York, plaintiffs' liability insurer (uninsured motorist coverage); and American Employers Insurance Company, the liability insurer of Harry J. Henry, the owner of the motorbike. (uninsured motorist coverage).
The trial court rendered judgment for plaintiffs against Joseph L. Guidry and Fidelity and Casualty Company of New York. Under a third party demand, judgment was rendered in favor of Fidelity and Casualty Company of New York against Joseph L. Guidry for the sum it is required to pay by the judgment. The suit was dismissed as to both State Farm Mutual Automobile Insurance Company and American Employers Insurance Company on the basis of noncoverage. Plaintiffs, Mr. and Mrs. Barrett, and defendant, Joseph L. Guidry, appeal to this Court.
This suit is replete with both factual and legal complexities. The trial judge has written a penetrating analysis of this case which we are pleased to adopt, to-wit:
"The evidence preponderates that on April 26, 1967, David Barrett, the 14 year old son of Mr. and Mrs. James R. Barrett, Sr., was operating a motorbike owned by Harry J. Henry. David was operating the motorbike with the permission of the owner. The accident occurred at the intersection of East and West Kent Streets in the City of Sulphur at approximately 7:30 A. M. The intersection is unusual in that as one proceeds south on Kent Street, this street forks forming East and West Kent Streets. East Kent Street is actually a straight extension of Kent Street, and West Kent Street circles gradually to the west forming West Kent Street. At the point that East and West Kent Streets come together a stop sign controlls traffic on vehicles traveling north on West Kent Street entering the intersection. These streets are all paved streets, and the weather was clear and the pavement dry at the time of the accident.
Prior to the accident a school bus was proceeding south on Kent Street which bus was in the process of picking up *902 school children. David Barrett was operating the motorbike following the school bus, and behind Barrett was an automobile being operated by Marilyn Hazel, now Mrs. Marilyn Nelson, with her mother as a passenger. Mrs. Nelson and her mother and the school bus driver testified that they were proceeding at approximately 25 to 30 miles per hour just prior to the accident and that the motorbike was being driven between these two vehicles at that same speed. As the school bus approached the intersection it began its gradual turn into West Kent Street, and David Barrett was proceeding straight ahead, which would have led him into East Kent Street. As the school bus passed the stop sign which is located near the divider that separates the beginning of East and West Kent Streets, Charles Guidry, operating a 1957 Chevrolet owned by his father, was proceeding north into the intersection with the intention of going north on Kent Street. These witnesses testified that Charles Guidry did not stop at the stop sign but proceeded on into the intersection directly in front of David Barrett, who collided with the right front center of the Guidry vehicle. The police measured 46 feet of skidmarks left by the Guidry automobile, testifying that a portion of the marks were dark and easily ascertainable but that the remainder of the skidmarks were not such that would leave black marks. The length of these skidmarks corroborate the testimony of the eye witnesses pertaining to the speed of the Guidry vehicle at the time that he applied his brakes, which would be in the neighborhood of 25 to 30 miles per hour. The school bus had the effect of obscuring the vision of Barrett and, likewise, Guidry from seeing each other as they both approached the intersection. As the Guidry vehicle came out into the intersection and into the view of Barrett, he was immediately in front of the motorbike, leaving the Barrett boy in a situation where the impending collision was inevitable. The failure of Guidry to heed the stop sign requirement and to ascertain the condition of traffic on East Kent Street at this intersection was negligence, and his negligence was the proximate cause of the accident.
The pictures reflect that the impact occurred with the vehicles situated near the center of the intersection, with the automobile traveling forward very little after the point of impact.
There is some evidence that David was not looking ahead at the time of the accident. This was testified to by a young girl who was in the school bus, but who was rather confused as to other aspects of her testimony, therefore little weight can be given to this testimony. Charles Guidry and his passenger also stated that David was not looking toward them at the time of the accident, but we must consider this evidence in light of their interest in the case and the friendship existing between Charles and his passenger.
Furthermore, a person who has the right of way has a right to assume that traffic approaching an intersection on a less favored street will obey the rules of traffic and stop at a stop sign, and he can indulge in this presumption until he has seen, or should have seen, that the person was not going to comply with the law, and then have an opportunity thereafter to so maneuver his vehicle as to avoid the collision.
The facts do not justify a holding that David Barrett could have avoided this collision under these circumstances. At 30 miles per hour his reaction time would have been approximately 33 feet. The passenger in the Guidry vehicle stated that the first time that he saw the motorbike was two or three car lengths away. He estimated a car length at approximately 12 feet. Each vehicle was traveling 25 miles per hour when they came into view of each other. At that point the space between them was closing at the rate of 75 feet per second. The obstruction of the view of Guidry by the school bus of vehicles proceeding on the right of way street had the effect of imposing a higher duty upon Guidry of stopping and clearly ascertaining *903 traffic conditions thereon than would be had the obstruction not been so located. This he did not do.
The Court concludes that the negligence of Charles Guidry was the sole and proximate cause of the accident and resulting injuries in this case.
The next issue is that of coverage as between the insurance companies involved as parties defendant.
State Farm denies coverage. Both American Employers and Fidelity and Casualty are sued under the uninsured motorist provisions of their policies. As to whether the latter two defendants could be liable depends upon the outcome of the coverage issue raised by State Farm. At the time of the accident, April 26, 1967, Mr. Guidry was the owner of three automobiles, a 1964 Pontiac, 1965 Dodge and the vehicle involved in the accident, a 1957 Chevrolet. State Farm had issued two separate liability policies with one covering the Pontiac and the other covering the Dodge. The Pontiac coverage was issued October 1, 1966, and the Dodge coverage was issued March 31, 1965. Guidry purchased the Chevrolet in January of 1967. He did not notify State Farm of such acquisition until the day of the accident.
The policies both contain the following provisions:
"(c) A private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided
* * * * * *
"(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within thirty days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, * * *.'
"Item 2Policy Period (monthdate year)
"The term of the policy shall be from 03-31-65 to 07-27-65 12:01 A.M. Standard Time at the address of the named insured as stated in Item 2 below.
"ITEM 2Policy Period: The term of the policy shall be as stated under Item 2 on page 1 and for such terms of six calendar months each thereafter as the required renewal premium is paid by the insured on or before the expiration of the current term.'
"This agreement shall apply to each successive policy period for which the company consents to renew or continue this policy but nothing herein shall obligate the company to renew or continue the policy."
Counsel for State Farm contends that the phrases `policy period' and `the term of the policy' are synonymous and refer to a specific period of time of either the period designated on the face of the policy or a six-month renewal period. The plaintiff and remaining defendants contend that only one policy on each automobile was issued and these policies are kept effective by the payment of the premium each 6 months following the initial policy period. These parties contend, by this interpretation, that the policy period is continuous and unbroken as long as premiums are paid and thus the `after-acquired' automobile was covered when notice of the acquisition was given on the day of the accident.
A similar policy, with identical wording as those in question, was discussed in the case of Borne v. Dillon, La.App., 201 So.2d 115, wherein the Court observed:
"The evidence reveals that State Farm Policy No. 112 086 C18 18, which is in evidence, was issued to Dillon on April 12, 1957 for a term from March 18, 1957 to September 18, 1957 "and for such terms of six calendar months each thereafter as the required renewal premium is paid by the insured on or before expiration of the current term." A policy condition permits cancellation by either the insured or the company on written notice.

*904 "The initial premium was paid in advance of March 18, 1957. Subsequent premium payments due every six months on September 18, 1957, March 18, 1958 and September 18, 1958 were made by Dillon, each three days late on the 21st of the month in which they became due, thus renewing the policy according to its terms to March 18, 1959. No other payment was made by Dillon until September, 1959. On September 21, 1959 Dillon's wife sent State Farm a check in the amount of the premium.'
It must be noted that the Court recognized that the payment of the premiums each six months acted as `renewing the policy according to its terms'. The Court further stated that such renewal was for a definite period.
That case further held as follows:
"A valid insurance policy is a contract between the insured and the insurer; under LSA-C.C. Art. 1901, as is true of all other contracts, it is the law between the parties; the rules for its interpretation are the same as those for other contracts generally; and under LSA-C.C. Art. 1945 courts must give legal effect to all valid contracts `according to the true intent of all the parties' which intent is to be determined by the words of the contract when the same are clear and explicit and lead to no absurd consequences. Hemel v. State Farm Mut. Auto. Ins. Co., 211 La. 95, 29 So.2d 483; Edwards v. Life & Casualty Ins. Co., 210 La. 1024, 29 So.2d 50; Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 125 A.L.R. 1075; Sholes v. Continental Casualty Co., La.App., 196 So.2d 680, supra.
"In addition, our Insurance Code, particularly LSA-R.S. 22:620, provides inter alia:
"Any insurer may insert in its policies any provisions or conditions required by its plan of insurance or method of operation which are not prohibited by the provisions of this Code."` The word `renew', in its popular sense, means to make new again, reestablish or revive an expiring subject. When a premium payment is made following the original policy period, the terms of the policy were reestablished, revived or made new again and became effective for a period of 6 months. This process, each 6 months, revived or renewed the policy as it approached the end of the period or term of its agreed termination. Having come to this conclusion the next question is whether Guidry notified State Farm `during the policy period or within 30 days after the acquisition of his election' to have the newly acquired automobile covered under the terms of either of the policies.
The Chevrolet involved in the accident was purchased by Guidry according to the bill of sale on January 16, 1967. Guidry testified that he thought the date on the bill of sale was incorrect and should have been January 22, 1967. Whether the 22nd or 16th, the results are the same. The third renewal term in the policy on the Dodge expires January 29, 1967. Guidry failed to notify State Farm of the acquisition of the Chevrolet within the policy period or within 30 days after such acquisition. The Pontiac policy's first period expired April 1, 1967. Notice was not given before the expiration of that policy period. Thus, when the accident occurred on April 26, 1967, the time for giving notice under either policy had expired by the terms of the policy. State Farm had no coverage on Guidry's 1957 Chevrolet at the time of the accident and the suit will be dismissed as to that defendant.
We turn next to the coverage problem presented by American Employers Insurance Company which was sued as the uninsured motorist carrier of Henry, the owner of the motorcycle upon which the Barrett boy was riding when he was involved in the accident. The policy period for American Employers Insurance Company's policy is February 3, 1967, through February 3, 1968. The bill of sale reveals *905 that the motorcycle was sold to Henry December 16, 1966 (American Employers II). The application for a certificate of title, (dated 1/26/67) states that the machine was purchased "12/16/66." It is clear that this motor vehicle was acquired by Henry before the liability policy of American Employers became effective. The policy provided no liability coverage for the Honda motorcycle. This brings up the question of whether the uninsured motorist provisions of the policy apply to the Honda which was owned by the insured but not covered in the liability policy.
LSA-R.S. 22:1406 provides as follows:
"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicle * * *.'
That provision clearly reflects that the uninsured motorist provisions are to be incorporated into all liability policies to provide uninsured motorists coverage or protection for persons insured thereunder. Such is not the case here. The insured was not covered therefore the uninsured motorists provisions of the policy of American Employers Insurance Company do not apply. The suit shall be dismissed as to this insurer."
The trial court awarded $5,000.00 to each parent and special damages of $1,843.88. Plaintiffs complain that this award is grossly inadequate in light of other awards for wrongful death. We agree the sum is inadequate, but the facts bear out the award. Defendant, Joseph L. Guidry, ends up with the total financial burden, and he is a man of modest means. His total income for 1968 was $4,200.00, and his modest home has a substantial mortgage on it. Our courts have held that defendant's ability to pay is a factor to be considered in awarding damages. Rollins v. New York Fire and Marine Underwriters, Inc., La.App., 225 So.2d 663 (3rd Cir. 1969). Clearly defendant's ability to pay is limited and the trial court properly considered this in deciding the question of quantum. There is no manifest error here.
The judgment of the trial court is affirmed. Defendant-Appellant Joseph L. Guidry, shall pay all costs.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.
TATE and MILLER, JJ., not participating.