STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
CA 08-1571

D & D PIPE AND RENTALS, INC.

VERSUS

CENTURY EXPLORATION NEW ORLEANS,INC., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2006-6525
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Richard K. Leefe**
**Michael R. Gelder**
**Leefe, Gibbs, Sullivan, et al.**
**3900 N. Causeway Blvd., #1470**
**Metairie, LA 70002**
**(504) 830-3939**
**Counsel for Defendant/Appellee:**
**Century Exploration New Orleans, Inc.**

**Patrick J. Hanna**
**Rabalais, Hanna & Hays**
**701 Robley Dr., #210**
**Lafayette, LA 70503**
**(337) 981-0309**
**Counsel for Defendant/Appellant:**
**RNA, Inc.**
**International Oilfield Services/PCI Services**

**Edgar Dean Gankendorff**
**Brial L. Radcliffe**
**Provosty & Gankendorff, LLC**
**650 Poydras St., Suite 2700**
**New Orleans, LA 70130**
**(504) 410-2795**
**Counsel for Plaintiff/Appellee:**
**D & D Pipe and Rentals, Inc.**

**Robert J. David, Jr.**
**Sue Nations**
**Juneau, David, et al.**
**P. O. Drawer 51268**
**Lafayette, LA 70505**
**(337) 269-0052**
**Counsel for Defendant/Appellee:**
**Lexington Insurance Company**

**GREMILLION, Judge.**

Appellants, RNA, Inc. and International Oilfield Services/PCI Services, a division of RNA, Inc. ( "RNA") appeal the trial court's grant of summary judgment in favor of Lexington Insurance Company, RNA's general liability carrier, declaring that Lexington's policy does not cover the claims against RNA. For the reasons that follow, we affirm.

## FACTS

In 2006, D&D Pipe and Rentals, Inc. (D&D), filed suit on open account against Century Exploration New Orleans, Inc., for the outstanding balance allegedly owed by Century for pipe it purchased from D&D. Century filed a reconventional demand against D&D alleging that the pipe was unsatisfactory and had caused a loss of hydrocarbons and forced cessation of production at Century's Breton Sound 52 facility. D&D, in turn, filed a third-party demand against RNA.

In its third-party demand, D&D alleged that it contracted with RNA for the testing and inspection of the pipe. RNA, it is alleged, warranted to D&D that the pipe was in good and satisfactory condition and fit for its intended purpose. D&D further alleged that RNA either failed to test and inspect the pipe, or did so improperly.

RNA thereafter made demand upon Lexington, as its insurer, for indemnity and defense. Lexington denied that it even owed RNA a defense. RNA then filed an incidental demand against Lexington.

Both sides filed motions for summary judgment. RNA's motion sought a declaration from the court that Lexington owed it a defense. Lexington's motion asserted that the demands against RNA were not covered by its policy. The trial court heard the motions and granted Lexington's.

1

RNA supported its motion for summary judgment with a copy of the policy issued by Lexington. Lexington's motion for summary judgment was supported by a copy of the same policy and four printed pages reflecting the content of RNA's website, www.iospci.com. These website pages tout RNA's expertise in inspecting drill pipe for flaws, deformations and the like. RNA opposed Lexington's motion with the affidavit of Mr. Kevin McKay, Vice President of International Oilfield Services/ PCI Services. McKay attested to the inspection performed on the D&D pipe and to the fact that RNA at no time warranted the pipe for any particular purpose, gave any opinion as to the integrity of the pipe, and followed the specifications supplied by D&D.

## ANALYSIS

An appellate court reviews a grant of summary judgment *de novo*, applying the same standards as would a trial court. *Schroeder v. Board of Sup'rs. of La. State Univ.*, 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966, as amended by Act 483 of 1997, provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential facts of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So. 2d 606.

2

The pleadings alone can form the basis of a summary judgment. La.Code Civ.P. art. 966. Obviously, though, if those pleadings are subject to more than one reasonable conclusion as to the material facts of the case, an issue of material fact exists and summary judgment may not be granted. Therefore, because the two motions for summary judgment were largely based upon the pleadings of the case, it is necessary that we carefully scrutinize them to determine whether there is no material issue of fact. In so analyzing the pleadings, we must keep the pleadings as a whole in context and not pick and choose individual words or phrases.

Lexington argues that D&D alleges that the fault of RNA deprived Century of the use of the Breton Sound 52 facility. The policy excludes "property damage" to "impaired property," or to property that has not been physically injured, arising out of a deficiency, inadequacy or dangerous condition in the insured's product or work, or resulting from a delay or failure to perform a contractual obligation. We will refer to this exclusion as exclusion "m." Exclusion "m," however, contains the caveat that it "does not apply to the loss of use of other property arising out of a sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use." The definition of "property damage" in Lexington's policy includes the loss of use of tangible property. "Impaired property" is defined as:

> 8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because;
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
> b. You have failed to fulfill the terms of a contract or agreement;
> if such property can be restored to use by:
> a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
> b. Your fulfilling the terms of the contract or agreement.

Because it is alleged that the facility was rendered less useful by virtue of either

3

improper inspection or failure to inspect, and that Century lost the use of the facility as a result, that loss constitutes property damage to impaired property or to property that has not been physically injured and is not covered by virtue of exclusion "m."

RNA counters issues of material fact exist regarding the nature of the alleged losses sustained by Century and D&D. These issues of material fact call into question whether the losses constitute "property damage" and thus preclude summary judgment. RNA assigns two errors: 1) the trial court's ruling that Lexington owed it no defense, and 2) the finding by the trial court that there existed no issue of material fact.

In analyzing a coverage dispute, we must bear in mind some elemental principles. First, the purpose of liability insurance is to protect the insured from damage claims. Policies are, therefore, construed to give effect to, and not deny, coverage. *Reynolds v. Select Properties, Inc.*, 93-1480 (La. 4/11/94), 634 So.2d 1180. However, in interpreting a policy, a court may not pervert language or employ invention to find ambiguity where none exists. *Muse v. Metropolitan Life Ins. Co.*, 193 La. 605, 192 So. 73 (1939). Exclusions are, though, subject to strict construction. *Reynolds*, 634 So.2d 1180.

The reconventional demand of Century against D&D alleges:

15.
Century took possession of the 2.875" pipe in Venice, Louisiana on or about April 26, 2006, after delivery by Acme Truck Lines, Inc.

16.
Century loaded the 2.875" pipe onto barges where it was taken to Breton Sound 52, for installation on a hydrocarbon production project.

17.
After installation, Century's production meters registered a significant decrease in production levels.

18.
Upon further examination, Century stopped production to examine the

4

newly purchase pipe, only to find holes and internal pitting on various joints of the 2.875" pipe purchased from D&D Pipe and Rentals, Inc.

These allegations assert that Century suffered a loss of production from the Breton Sound 52 facility as a result of the defects in the pipe sold by D&D. Clearly and unambiguously, the Breton Sound 52 facility falls within the definition of "impaired property": it is tangible property that could not be used or was rendered less useful because of the incorporation of the pipe inspected by RNA. The damages also meet the definition of "property damage" in that Century alleged a loss of use of the facility that was not physically injured. Therefore, we find that Century did allege property damage to impaired property arising out of a defect, deficiency, inadequacy or dangerous condition in RNA's work.

We find the caveat to the exclusion inapplicable to the case. What D&D alleged is that after it deployed the pipe, it experienced a decrease in hydrocarbon production. It did not allege a sudden or accidental physical injury to the pipe. Rather, what is alleged is that the pipe had pitting and holes that caused the decrease in production.

RNA also seeks indemnification and defense from Lexington based upon D&D's allegations. D&D's allegations incorporate by reference those of Century. Paragraph 8 of D&D's third-party demand also alleges that RNA's failure caused D&D damages in the form of expenses of this litigation, cost of the pipe, loss of use of the pipe, and lost profits. We find using the same analysis that the pipe itself constitutes impaired property and the loss of its use—and all damages that flow from that loss—is property damage to that impaired property. Those damages are likewise excluded under exclusion "m."

Having determined that the claims against RNA are clearly and unambiguously

excluded by Lexington's policy, we find that Lexington owes no defense to RNA. The language of the policy clearly and unambiguously states that Lexington does not have an obligation to defend RNA against a suit seeking damages because of bodily injury or property damage to which the policy does not apply.

## CONCLUSION

Little evidence was produced to support and oppose Lexington's motion for summary judgment and did not raise an issue of material fact regarding the nature of the losses allegedly sustained by Century and D&D. Those losses, as alleged, constitute property damage to impaired property arising out of a defect, deficiency, inadequacy or dangerous condition in RNA's work, and are clearly and unambiguously excluded by Lexington's policy. The judgment of the trial court is affirmed. All costs of this appeal are taxed to appellants.

**AFFIRMED.**